# Nitterhouse Concrete Products v. Pennsylvania Manufacturers' Association Insurance Company

C.P. of Franklin County, no. 2002-2970.

*David E. Lehman,* for plaintiff.
*Charles E. Wasilefski,* for defendant.

HERMAN, *J.,* June 30, 2004—

## INTRODUCTION

Before the court is a motion for judgment on the pleadings filed by defendant Pennsylvania Manufacturers' Association Insurance Company (PMA) in response to a complaint filed by plaintiff Nitterhouse Concrete Products seeking declaratory relief.[1] This action arises from Nitterhouse's request that PMA defend and indemnify it under a commercial general liability insurance policy issued by PMA to Nitterhouse. Nitterhouse seeks defense and indemnification as a result of a suit filed in Lancaster County against Nitterhouse by the School District of Lancaster. Nitterhouse answered PMA's motion for judg-

---

1. There are nine other defendants in the instant action.

ment on the pleadings. These two parties filed briefs and the court heard oral argument on the motion. The matter is ready for decision.

## BACKGROUND

### *The Lancaster Action*

Nitterhouse agreed to manufacture and supply pre-cast concrete for a construction project at McCaskey East High School in Lancaster County. Nitterhouse agreed to prepare shop drawings showing the connection between a plank designed by Nitterhouse and the load-bearing walls at the school. Nitterhouse subcontracted the installation work to J.L. Erectors Inc.

On October 5, 2001, Lancaster filed a complaint alleging that the construction project resulted in serious structural problems at the school.[2] The complaint contained a claim entitled "Breach of contract by Nitterhouse" (Count III). Nitterhouse asked PMA to defend and indemnify pursuant to the PMA policy. PMA refused, prompting Nitterhouse to file this declaratory judgment action. Lancaster then filed an amended complaint which again alleged breach of contract and also contained a claim entitled "Negligent misrepresentation by Nitterhouse" (Count XVII). Nitterhouse filed an amended declaratory judgment action, again seeking coverage under the PMA policy in response to Lancaster's allegation of negligent misrepresentation.

Lancaster makes the following allegations against Nitterhouse in Count III entitled "Breach of contract."

2. There are eight other defendants in the Lancaster action.

According to Lancaster, Nitterhouse breached its contract when it failed to detect inadequate bearings, failed to verify load-bearing masonry wall locations, and failed to install proper bearing pads. ¶¶32-33. "Nitterhouse knew (or had reason to know) that [the architect] and [the structural engineering subcontractor] had designed only one building expansion joint for [the school]." ¶33. "Nitterhouse knew (or had reason to know) that one expansion joint was inadequate to accommodate building movement at [the school] and would lead to structural deficiencies at the plank-to-wall connection as designed by Nitterhouse." *Id.* These deficiencies, arising out of Nitterhouse's allegedly "negligent performance of its work," purportedly caused material defects in the structural integrity of the school. ¶38.

The allegations in Count XVII entitled "Negligent misrepresentation by Nitterhouse" are that Nitterhouse submitted shop drawings showing construction details which it never intended to follow. ¶130. Nitterhouse submitted drawings depicting the method of connecting the pre-cast concrete plank to the structural masonry walls. Those drawings showed a 4-inch by 4-inch bearing pad installed on top of the wall under each of the four plank legs. ¶132. Approximately 50 percent of the bearing pads depicted in Nitterhouse's drawings are missing from the school as built, and approximately 50 percent of the pads which were installed are in the wrong place. ¶134. Nitterhouse's senior vice president, John M. Jones, admitted during his deposition that Nitterhouse only expected to install two bearing pads at the end of each plank, not four pads as shown in its shop drawings. ¶135. According to Lancaster, Nitterhouse issued its drawings

knowing the school district and its consultants expected Nitterhouse to comply with its depiction of the bearing pads as illustrated in those drawings. ¶137. "Nitterhouse should have known its shop drawings falsely depicted what Nitterhouse expected to be installed in the field with respect to bearing pads." ¶138. Nitterhouse's alleged misrepresentation in submitting the drawings caused the school district substantial damages due to the structural problems at the school. ¶140.

Based on the foregoing, PMA contends that the Lancaster action is one only for breach of contract and/or intentional conduct, despite the tort-like couching of Count XVII and use of the word "negligence" in certain paragraphs under Count III. Under PMA's view of the Lancaster suit's allegations and certain provisions of the policy, PMA need not defend and indemnify Nitterhouse for Nitterhouse's own intentional conduct in failing to fulfill its contract with Lancaster. By contrast, Nitterhouse maintains that the policy obligates PMA to provide broad defense and indemnification for a wide range of "occurrences," and that such obligation is not defeated by certain policy exclusions.

## Standard of Review

Nitterhouse's complaint is an action for declaratory relief under the Declaratory Judgments Act, which authorizes the court to declare, settle and make certain the rights, status and other legal relations between the parties. 42 Pa.C.S. §7532. The interpretation of written contracts, including insurance policies, is a proper subject for a declaratory judgment action. Section 7533.

The court should grant a motion for judgment on the pleadings only where the pleadings and attached documents demonstrate that no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1034; *Vetter v. Fun Footwear Co.,* 447 Pa. Super. 84, 668 A.2d 529 (1995). The motion is similar to a demurrer. *Citicorp North America Inc. v. Thornton,* 707 A.2d 536 (Pa. Super. 1998). In the insurance context, the complaint's factual allegations must be taken as true and the complaint should be liberally construed. All doubts as to whether the insurance policy covers the claims must be resolved in favor of the insured. *Unionamerica Insurance Co. Ltd. v. J.B. Johnson,* 806 A.2d 431 (Pa. Super. 2002). An insurer's duty to defend an insured arises whenever the complaint filed by the allegedly injured party may potentially fall under the policy's coverage. *Stevens Painton Corporation v. First State Insurance Co.,* 746 A.2d 649 (Pa. Super. 2000). "[T]he duty to defend remains with the insurer until it is clear the claim has been narrowed to one beyond the terms of the policy." *Belser v. Rockwood Casualty Insurance Co.,* 791 A.2d 1216, 1219-20 (Pa. Super. 2002).

## DISCUSSION

### The Meaning of "Occurrence" Under the PMA Policy

The policy obligates PMA to pay for damages Nitterhouse incurs because of property damage caused by an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Section V.12. Excluded is prop-

erty damage which is expected or intended, from the standpoint of the insured. Section I.A.2(a). Whether the damage is caused by an "accident" must be determined from the perspective of the insured. *Cardwell v. Chrysler Financial Corp.,* 804 A.2d 18 (Pa. Super. 2002).

It is well-established that courts must construe the words of an insurance contract according to their plain meaning and ordinary usage. *Riccio v. American Republic Insurance Co.,* 550 Pa. 254, 705 A.2d 422 (1997). According to ordinary usage, an accident is "an event occurring by chance or arising from unknown causes; a lack of intention or necessity; an unfortunate event resulting from carelessness, unawareness, or ignorance, or a combination of causes; an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured, but from the consequences of which he may be entitled to some legal relief." Webster's.

PMA's main contention is that a breach of contract can never constitute an "occurrence" because such a breach cannot be considered an accident, but is instead always the result of intentional conduct, the type of conduct which is not covered by the policy. This argument must be rejected for two reasons. First, the clear policy definition of "occurrence" says nothing about breach of contract. Similarly, PMA points to language in the policy which excludes coverage for contractual liability, which we will discuss more closely below. For the moment we note that, although it is true that the policy does not *generally* cover contractual liability, such specific exclusionary language would be wholly superfluous if a breach of contract could *never* constitute an "occurrence."

Second, this same argument has already been rejected by the Superior Court in *Kvaerner Metals Division of Kvaerner U.S. Inc. v. Commercial Union Insurance Co.,* 825 A.2d 641 (Pa. Super. 2003), a case which addressed the exact same definition of "occurrence" as is contained in the PMA policy:

"The [insurance] industry has now taken to arguing that whenever a claim of defective construction is alleged against an insured, the claim is automatically barred from coverage as not constituting an 'occurrence.' The position is nothing more than a rehash of the 'business risk' doctrine, [the success of which] depends entirely on courts ignoring the actual language of the [commercial general liability] policy." *Id.* at 653.

The contention that a breach of contract can never be an accident is unsupported, particularly when, from the perspective of the insured, the damage was neither intended nor expected. In this case, Nitterhouse hired subcontractor J.L. Erectors Inc. to install the pre-cast concrete supplied by Nitterhouse. If J.L. Erectors made errors in the installation process, those errors were arguably neither intended nor expected by Nitterhouse. Unintended damage during a construction project can be considered an accident under the type of policy issued by PMA. *Id.* at 654.

To support its contention that a breach of contract can never be an accident and therefore never an "occurrence" triggering coverage, PMA relies heavily on *Pennsylvania Manufacturers' Association Insurance Co. v. L.B. Smith Inc.,* 831 A.2d 1178 (Pa. Super. 2003), and *Snyder Heating Company Inc. v. Pa. Manufacturers' Association Ins. Co.,* 715 A.2d 483 (Pa. Super. 1998). However,

PMA's reliance on *L.B. Smith* and *Snyder* is misplaced insofar as those insureds wanted coverage for their *own* conduct. Those cases did not involve a company's claim for coverage based on liability arising from the actions of a third-party subcontractor, in contrast to the instant case where Nitterhouse maintains that it could not have anticipated J.L. Erectors' allegedly negligent conduct. From Nitterhouse's perspective, its subcontractor's errors were an accident, leading to negative results which Nitterhouse never intended.

Furthermore, even if Nitterhouse's actions were "intentional" on some level, it is still possible that coverage is called for insofar as the specific language of the policy excludes only property damage which was expected or intended *from the standpoint of the insured.* Section I.A.2.a. "An insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *Erie Insurance Exchange v. Fidler,* 808 A.2d 587, 590 (Pa. Super. 2002). It would indeed be a stretch for this court at this stage of the proceedings to conclude as a matter of law that Nitterhouse expected or intended its actions to result in major structural problems at the school.

## Gist-of-the-Action

As a corollary to the above discussion, PMA argues Nitterhouse is not entitled to coverage under the gist-of-the-action doctrine. This doctrine prevents a party from re-casting an ordinary breach of contract claim into a tort claim in order to bypass the contractual exclusion for coverage in a commercial general liability policy. The

court must look beyond the couching of what are essentially contract claims using tort-like language so as to prevent the blurring of the distinction between contract and tort theories of liability and recovery. This is important because tort actions are based on a breach of duty imposed by law as a matter of social policy, whereas contract actions are based on duties resulting from agreements between the parties. *Etoll Inc. v. Elias/Savion Advertising Inc.,* 811 A.2d 10 (Pa. Super. 2002).

PMA invokes the doctrine largely in response to the deposition testimony of Nitterhouse Senior Vice President John M. Jones in which Mr. Jones allegedly "admitted that Nitterhouse only expected to install two bearing pads at the end of each plank, not four pads as depicted in its shop drawings." (¶135 of the Lancaster amended complaint.) Based on this single piece of "proof," PMA concludes that Nitterhouse's conduct was an intentional act, not a product of happenstance, and therefore the Lancaster action alleges breach of contract and breach of contract alone. We disagree with the position urged on us by PMA.

First, PMA has not made Mr. Jones' deposition part of the record in the instant case and therefore we cannot consider it under the rules regarding motions for judgment on the pleadings, nor does PMA's distillation allow us to independently review Mr. Jones' testimony in the context of his entire testimony. As a result, we cannot discern the level of Mr. Jones' familiarity with the process by which Nitterhouse allegedly conceived and drew up the shop plans at issue, that is, his personal knowledge of the necessary loads, materials and construction methods appropriate to this particular project.

We cannot classify Nitterhouse's conduct as a strictly intentional contractual breach and leave Nitterhouse without a means of defense based solely on this one fragment of this one deposition in a case (the Lancaster action) in which discovery is still ongoing.

Second, the gist-of-the-action doctrine precludes tort claims only when those claims arise *solely or principally* from a contract between the parties. *Etoll Inc. v. Elias/ Savion Advertising Inc.,* 811 A.2d 10 (Pa. Super. 2002). The doctrine bars tort claims (1) arising solely from a contract between the parties; (2) the duties allegedly breached were created and grounded in the contract itself; (3) the liability stems from a contract; or (4) the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. *Id.* at 19.

The problem with applying the doctrine is we are not yet in a position to discern whether Nitterhouse's alleged liability arises mainly under the contract(s) in question (that is, the contract between Nitterhouse and Lancaster, and the contract between Nitterhouse and subcontractor J.L. Erectors) until the precise scope of the participants' duties under those contracts is known. On the other hand, Nitterhouse makes an ostensibly reasonable contention that the structural problems at the school are to be traced to the negligence of J.L. Erectors in not installing the proper number of bearing pads for the load. Add to this the fact that the Lancaster amended complaint is not clear with regard to whether it believes Nitterhouse's failures stem from its role as manufacturer, supplier, plan designer or installer of the plank and pads. It is therefore premature for PMA to state with complete certainty that the

Lancaster action is alleging only breach of contract by Nitterhouse.

Furthermore, the contractual liability exclusion bars coverage for property damage for which the *insured* is itself obligated to pay damages because the insured has assumed that liability in a contract or agreement. Section I.A.2.b. However, Lancaster's contract claim against Nitterhouse appears not to be based on Nitterhouse's assuming the liability of another (J.L. Erectors, for example) in an indemnification or hold-harmless agreement, but is based on an allegation that Nitterhouse itself breached the contract with the school district. Therefore this exclusion does not bar coverage. Finally, even if there is some ambiguity as to the scope of this exclusion, the provision must be construed in favor of the insured. *Riccio v. American Republic Insurance Co.,* 550 Pa. 254, 705 A.2d 422 (1997).

## Other Exclusions

Although PMA cites to two exclusions in the policy to support its refusal to defend and indemnify Nitterhouse, those coverage exclusions are themselves limited by the clear and specific language of the policy. The policy contains exclusions for certain "Damage to property" and "Damage to your work."

"(2) *Exclusions.* This insurance does not apply to . . .

"(j) **Damage to property.** 'Property damage' to . . . (5) that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

(6) that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it . . . . *Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard . . . .'*

"(l) **Damage to your work.** 'Property damage' to 'your work' arising out if it or any part of it and included in the 'products-completed operations hazard . . . .' *This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*" Section I.A.2. (emphasis added)

The term "products-completed operations hazard" is defined as:

"(14) [All] . . . 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed . . . ." Section V.14.a.

Under these specific and unambiguous provisions, as well as the Superior Court's interpretation of that very same language in *Kvaerner Metals, supra,* the exclusion for "damage to property" does not apply to property damage which occurs away from Nitterhouse's premises and which arises out of Nitterhouse's completed work. The exclusion for "damage to your work" does not apply to property damage which arises from the completed work of a subcontractor, in this case, the installation work allegedly done by J.L. Erectors.

PMA relies on *Ryan Homes Inc. v. Home Indemnity Co.,* 436 Pa. Super. 342, 647 A.2d 939 (1994), in which

the court found that policy language very similar to the above language in the PMA policy did not require the insurer to cover damage to work done by the insured or arising out of that work. The insured in *Ryan* was the general contractor who was required to repair defective construction work done by a subcontractor. The key distinction between *Ryan* and the instant case, and it is a pivotal one, is that the policy in *Ryan* did not feature a subcontractor exception to the coverage exclusion. That exception may alter the definition of "your work" under the "products-completed operations hazard" provision so as to exclude work done by a subcontractor. *Kvaerner Metals, supra.* It is critical in this context that we not eliminate Nitterhouse's ability to be defended in the Lancaster action insofar as that plaintiff fails to make clear in the amended complaint the basis for what it believes is Nitterhouse's liability.

The second exclusion PMA relies on to deny coverage pertains to "damage to impaired property or property not physically injured." Section I.A.2.m. The exclusion applies to property damage to impaired property or property which has not been physically injured "arising out of (1) a defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work' or (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms . . . . *This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.*" (emphasis added)

It is clear that Lancaster alleges physical injury to the school. For example, the amended complaint in that ac-

tion avers that the masonry walls show cracks. ¶14. Also, a large section of masonry block broke away from one of the building's walls, causing a piece of ceiling tile to crash to the ground. ¶15. These paragraphs, as well as many other references throughout the amended complaint to the building's structural unsoundness, are clearly sufficient to trigger the exception to the exclusion, and to defeat PMA's motion for judgment on the pleadings.

An appropriate order of court is attached.

## ORDER

Now, June 30, 2004, the court hereby denies the motion for judgment on the pleadings filed by defendant Pennsylvania Manufacturers' Association Insurance Company, pursuant to the attached opinion.

*Pursuant to the requirements of Pa.R.C.P. 236, the prothonotary shall give written notice of the entry of this order, including a copy of this order, to each parties' attorney of record and to each party, and shall note in the docket the giving of such notice and the time and manner thereof.*