J-A22037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| INDEPENDENCE AVENUE INVESTMENTS, LLC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| TRADAVO, INC. | : | |
| | : | |
| Appellee | : | No. 1573 MDA 2020 |

Appeal from the Order Entered November 23, 2020
In the Court of Common Pleas of Cumberland County
Civil Division at No(s): 2018-08120

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: JANUARY 10, 2023**

Appellant, Independence Avenue Investments, LLC, appeals from the order entered in the Cumberland County Court of Common Pleas, which revised the second confession of judgment on behalf of Appellee, Tradavo, Inc., in favor of Appellant. We affirm in part, reverse in part, and remand for further proceedings.

The factual and procedural history of this case are as follows. Appellant and Appellee entered into an Office/Warehouse Lease Agreement ("Lease"), dated February 29, 2016, whereby Appellee leased part of Appellant's premises for use as an office, storage, and food distribution facility. The Lease provided that Appellee was to take possession of the premises on June 1, 2016, and pay rent of $4,322.40 per month through November 30, 2016. Thereafter, the monthly installment increased to $7,544.27 through June 30,

2017. The base annual charge then increased by 2.54% per year in each successive term. The initial term of the Lease was sixty-six months. The Lease was "triple net" in that Appellee was "responsible for all operating expenses including all utilities, pro-rated common area maintenance and pro-rated taxes" as well as the base annual charge. Appellant performed build out of special improvements to the premises as requested by Appellee.

The Lease explained that an event of default of the Lease would include, *inter alia*, failure to pay rent timely and failure to take occupancy of the premises. (Lease at § 21.01). If an event of default occurred and continued for 60 days after notice from Appellant, Appellant was authorized to do one or more of the following without additional notice:

a. Terminate this Lease by giving written notice of the termination to the Tenant, in which event Tenant shall immediately surrender the Premises to Landlord. If Tenant fails to do so, Landlord may, without notice…enter upon and take possession of the Premises…; and **Tenant shall be liable to Landlord for all loss and damage which Landlord may suffer by reason of such termination, whether through inability to re-let the Premises or otherwise, including any loss of Rent for the remainder of the Term**. Any such loss of Rent shall be offset by any Rent received by Landlord as a result of re-letting the Premises during the remainder of the Term.

b. Terminate this Lease, in which event Tenant's event of default shall be considered a total breach of Tenant's obligations under this Lease and Tenant immediately shall become liable for such damages for such breach amount, equal to the total of:

1) the costs of recovering the Premises;

2) the unpaid Rent and Additional Rent, if any, due from

the date of the Event of Default to the date of termination, together with pre- and post-judgment interest thereon at a rate per .83% per month.

3) the Rent and Additional Rent, if any, and other benefits (*i.e.*, operating expenses and common area maintenance costs) which Landlord would have received under the Lease from the date of termination to the end of the remainder of the Term, at the rates set forth herein, together with all other expenses incurred by Landlord in connection with Tenant's default together with pre- and post-judgment interest thereon at a rate of .83% per month.

4) **all other sums of money and damages** owing by Tenant and Landlord as set forth in Paragraph 21.01 [of this Lease].

5) the interest rate of .83% per month shall survive any judgment being entered on the damages set forth in this subparagraph.

c. Enter upon and take possession of the Premises as Tenant's agent without terminating this Lease and without being liable to prosecution or any claim for damages therefore. Landlord may re-let the Premises as Tenant's agent and receive the Rent therefore, in which event Tenant shall pay to Landlord on demand any and all other amounts in addition to the lost rent necessary to compensate Landlord for all the damages proximately caused by the Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom including, but not limited to: additional broker's commissions, advertising costs, maintenance costs, utility costs, insurance costs, rent concessions, renovating expenses, the balance of the unamortized costs, as of the date of the Event of Default, incurred by the Landlord in the building out special improvements to the Premise for Tenant's use of the Premises, repair expenses, refitting expenses, any deficiency in rent that may arise by reason of re-letting, such re-letting should not affect Tenant's liability for Rent or for damages, and all other expenses related to re-letting the Premises. The interest rate of one percent (1%) per month shall survive any judgment being

entered.

Landlord shall be required to use reasonable efforts to re-let the Premises on such terms and conditions as Landlord in its commercially reasonable discretion may determine (including without limitation, a term different than the Term of this Lease, rental concessions, alterations and repairs of the Premises, providing a tenant finish allowance, paying moving expenses or providing tenant inducements)…

\*　　\*　　\*

Should Landlord re-let Tenant's Premise after Tenant defaults then Landlord shall credit any rent received from the new Tenant against that which this Tenant would otherwise be obligated to pay to Landlord pursuant to this Lease.

d. Upon the occurrence of any Event of Default which is not cured by the Tenant within the period of time provided herein,… the Tenant hereby empowers any Prothonotary or any attorney of any court of record within the United States or elsewhere to appear for the Tenant with declaration filed, and confess judgment against the Tenant in favor of the Landlord, its successors or assigns, as of any term, for any Rent amount(s) to which the Landlord would be entitled from the date of the Event of the Default to the date of the filing of the judgment together with six (6) months accelerated rent as damages under the provisions hereof; and shall have successive rights every six (6) months to continue to file judgments for an amount equal to the rent accelerated for the next six (6) months and continue to confess judgment for six (6) months accelerated unpaid rent in the same fashion until the end of the term or upon the Premises being re-letted, including also attorney fees equal to ten percent (10%) of the total amount of such damages for collection of the same of the total amount of such damages, together with costs of suit, and the Tenant hereby waives all errors, defects and imperfections in entering said judgment or in any writ, or process, or proceeding thereon or thereto or in anyway touching or concerning the same; and for the confession and entry of such judgment, this Lease or a true and correct copy thereof shall be sufficient warrant and authority.  The authority and power contained

herein shall not be exhausted by one exercise thereof, but judgment may be confessed as aforesaid from time to time and as often as there is an occurrence of any Event of Default which is not cured by the Tenant as provided herein, or in the event of an Event of Default, and furthermore such authority and power may be exercised during the original and any extension or renewal thereof, or after the expiration or earlier termination of the term hereof. The interest rate of one percent per month (1% per month) shall survive the entering of judgment.

Tenant shall have a right to file a motion to open or strike the judgment challenging the entry of the judgment on both the basis of the alleged Event of Default or the amount of the monetary judgment within thirty (30) days of the date of the entry of the judgment in accordance with the Pennsylvania Rule of Civil Procedure No. 2951.

(Lease at § 21.02) (emphasis added).

Appellee did not take possession of the premises and, on August 19, 2016, Appellant confessed judgment on behalf of Appellee pursuant to the warrant of attorney in the Lease. The amount of the initial judgment was itemized as follows:

|  |  |
|---|---|
| a. Unpaid Security Deposit: | $4,322.00 |
| b. Unpaid Monthly Installments of Base Rent and Common Area Maintenance Expenses: | |
| i. June 15-30, 2016: | $3,353.33 |
| ii. July 1-31, 2016: | $6,497.40 |
| iii. August 1-31, 2016: | $6,497.40 |
| c. Late Fees: | $750.00 |
| d. Monthly Installments of Base Rent and Common Area Maintenance Charges: | $48,650.01 |
| e. Attorneys' Fees: | $7,007.01 |
| f. Costs: | $46.00 |
| g. Interest from 07/01/2016: | $202.42 |
| Total: | $77,325.57 |

(Complaint for Confession of Judgment, 8/19/16). Appellee did not contest this judgment.

On August 21, 2018, Appellant again confessed judgment pursuant to the warrant of attorney in the Lease in the amount of $159,852.05, which was itemized as follows:

a. Unpaid Monthly Installments of Rent:
   i. March 1-31, 2017:     $7,544.27
   ii. April 1-30, 2017:    $7,544.27
   iii. May 1-31, 2017:     $7,544.27
   iv. June 1-30, 2017:     $7,544.27
   v. July 1-31, 2017:      $7,737.40
   vi. August 1-31, 2017:   $7,737.40
   **Total Rent               $45,651.88**

b. Unpaid Common Area Expenses
   i. March 1-31, 2017:     $2,175.00
   ii. April 1-30, 2017:    $2,175.00
   iii. May 1-31, 2017:     $2,175.00
   iv. June 1-30, 2017:     $2,175.00
   v. July 1-31, 2017:      $2,175.00
   vi. August 1-31, 2017:   $2,175.00
   **Total Common Area Expenses:     $13,050.00**

c. Late Fees:              $1,750.00
   **Total Late Fees:                $1,750.00**

d. Un-amortized Costs of Build Out
   of Tenant Improvements:   $76,562.00
   **Total Un-amortized Cost of
   Build Out of Tenant
   Improvements:                     $76,562.00**

e. Attorneys' Fees (10%):   $13,701.39
   **Total Attorneys' Fees:   $13,701.39**

f. Costs:                  $46.00
   **Total Costs:             $46.00**

g. Pre-Judgment Interest from
    03/01/2017 to 08/31/2017: $9,090.78

**Pre-Judgment Total Interest
(03/01/17-8/31/17)          $9,090.78**

**Gross Total:                  $159,852.05**

(Complaint for Confession of Judgment, 8/21/18, at 10-11).[1]

Following the filing of the second complaint for confession of judgment,

Appellee filed a petition to strike or open the judgment. Appellee, with

permission of the court, filed an amended petition to strike or open the

judgment on May 2, 2019, which alleged, *inter alia*:

8. [Appellant] is unable to confess judgment against [Appellee] because it failed to use reasonable efforts to re-let the Premises, despite the alleged ongoing default occurring for more than Two (2) years.

9. In the alternative, the amount of the judgment should be reduced by the period of time that [Appellant] failed to use reasonable efforts to re-let the Premises.

10. Further, [Appellant] confessed judgment for the total amount of $159,852.05,…

11. [Appellant] has re-let the Premises for a monthly amount of at least $9,958.44, which amount exceeds the monthly rent that was to be charged to [Appellee] for the same time period.

12. Section 21.02(c) of the Lease between the parties provides as follows: "Should Landlord re-let Tenant's Premise[s] after Tenant defaults then Landlord shall credit any rent received from the new Tenant against that which this Tenant would otherwise be obligated to pay to Landlord pursuant to this

_____

[1] For better clarity, we have made some minor formatting changes to this section of the complaint.

Lease…"

13. [Appellant] is receiving rent during the remainder of the term of the lease with [Appellee] that exceeds the amount of the rent that [Appellant] would have received from [Appellee] had [Appellee] not allegedly defaulted under the lease.

14. [Appellee] should receive a credit for the amount of rent received by [Appellant] in excess of the rent [Appellant] would have received from [Appellee] for the remainder of the lease period.

15. Further, included in the monthly rent charged to the new tenant, as referenced in Paragraph 11 above, is a partial payment for the [un-]amortized costs representing the improvements for tenant build out in the amount of $76,562.00.

16. [Appellant] is receiving payment from the new tenant for costs that [Appellant] has also confessed judgment against [Appellee].

17. Therefore, the amount of the judgment should be reduced by

   a. the amount of the rent received from the new Tenant that exceeds the amount of the rent that [Appellee] was otherwise obligated to pay to [Appellant] pursuant to the Lease.

   b. the amount of un-amortized costs of build out of tenant improvements.

(Petition to Strike or Open Judgment, 5/02/19, at 2-4).

On September 3, 2019, Appellant filed a motion to amend requesting

that the court amend the judgment as follows:

11.    One item of damage not included in the confessed judgment was the costs [Appellant] incurred to "build out" the leased premise to suit [Appellee's] particular needs in its business…. The cost incurred to "build" out the leased

- 8 -

premises for [Appellee's] needs equaled $25,917.62.

12. The confessed judgment also did not include all of the costs to "build out" the leased premises for the new tenant who eventually took over [Appellee's] space.... The total cost of "build out" for the new tenant equaled $97,537.37 instead of $76,562.00.

13. A final set of damages incurred by [Appellant] as a result of [Appellee's] breach of the Lease was the cost of the Broker's Commission for securing [Appellee] as a tenant which equaled $35,924.26. [Appellant] also incurred a Broker's Commission for securing the new tenant to occupy the space that would have been occupied by [Appellee] which equaled $85,678.78, all of which is authorized to be collected against [Appellee] by the terms of the Lease Agreement. (*See* [Lease at §] 21.02(c))[.]

14. As a result of the increases in the damages, the attorney fees should equal $30,550.98 instead of $13,701.39 and pre-judgment interest for the period of March 1, 2017 to August 31, 2018 should equal $27,424.67 instead of $9,090.78.

(Motion to Amend, 9/03/19, at 2-3). The motion to amend concluded that the total judgment that should have been confessed against Appellee by Appellant equals $374,450.03.

On September 20, 2019, Appellee filed an answer and new matter to Appellant's motion, claiming:

22. [Appellant] is precluded from amending its judgment against [Appellee] despite a reservation in the Lease permitting judgment to be confessed as often as there is an occurrence of default.

23. [Appellant] previously confessed judgment, through the warrant of attorney, for the same damages it is now seeking to amend.

24. As a matter of law, [Appellant] has exhausted the warrant of attorney.

(Answer and New Matter, 9/20/19, at 3).

On August 13, 2020, the court denied Appellant's motion to amend to the extent that it attempted to amend the amount of build out expenses claimed, and granted it in all other respects.

On August 25, 2020, the parties entered into a stipulation which provided as follows:

1. [Appellant] experienced losses and damages for unpaid rent, common area maintenance expenses and late fees during the period March 1, 2017 through September 30, 2017 consisting of the following:

   i. Unpaid Rent:                             $45,651.88
   ii. Common Area Maintenance Expenses: $13,050.00
   iii. Late Fees:                              $1,750.00
   TOTAL:                                       $60,451.88

   [Appellant] reserves the right to argue the Petition to Amend included an additional $7,737.40 in rent for September, 2017.

2. [Appellant] paid a real estate commission for [Appellee's] Lease on or about June 1, 2016 in the amount of $35,924.26.

3. [Appellant] paid the costs of the build-out for the MedCare Lease (Replacement Tenant) on or about October 1, 2017 in the amount of $76,562.00.

4. [Appellant] paid a real estate commission for the MedCare Lease (Replacement Tenant) on or about October 1, 2017 in the amount of $85,678.78.

5. [Appellee] never took possession of the premises and the term of the Lease ends on [December] 31, 2021.

6. The parties stipulate the [c]ourt may find, without further evidence, [Appellant] used reasonable commercial efforts to re-let the premises.

7. The parties stipulate the [c]ourt may find, without further evidence, [Appellant] incurred the following costs in securing a replacement tenant:

    i. Unamortized Costs of Build-Out for Replacement Tenant equaling $76,562.00; and

    ii. Realtor Commission to secure a replacement tenant equaling $85,678.78. [Appellant] claims [Appellee], pursuant to the terms of the Lease, is responsible for the cost of securing a replacement tenant. [Appellee], however, questions the legality of assessing the costs to [Appellee] and leaving the issue of [Appellee's] liability for the costs open for argument.

8. [Appellant] re-let the premises to MedCare Susquehanna Valley, LLC. Under the terms of the Lease with MedCare, the Rent Commencement Date was October 1, 2017 and the Expiration Date was August 31, 2027. For Year 1 through Year 5 of the Lease, MedCare's monthly rent was $9,958.44.

9. The parties stipulate that the rent received from the replacement tenant from October 1, 2017 through November 30, 2021 would equal $497,922.00 while the rent received from [Appellee] from October 1, 2017 through November 30, 2021 would have been $405,253.85 or a difference of $92,667.89. The parties agree if the replacement tenant pays the rent through November 20, 2021 there would be a difference of $92,667.89. [Appellant] reserves the right to argue that the excess difference in the rents cannot be used as an offset by [Appellee,] is speculative and is contrary to the terms of the Lease and the case law. [Appellee] reserves the right to argue it is an offset against any damages pursuant to the terms of the Lease.

(Stipulation, 8/25/20).

On August 25, 2020, the court conducted a hearing on the petition to

open or strike. At the hearing:

> [Appellant's] exhibits admitted into evidence at the hearing, in addition to the stipulation, consisted of the lease between [Appellant] and [Appellee], Basic Lease Information pertaining to the lease between [Appellant] and the replacement tenant, an itemization of build out expenses incurred by [Appellant] to accommodate the replacement tenant (totaling $97,537.37), a brokerage commission bill pertaining to [Appellee's] lease paid by [Appellant] around June 1, 2016 ($35,924.26), a brokerage commission bill pertaining to the replacement tenant's lease paid by [Appellant]…($85,678.78), an itemization of legal services rendered by [Appellant's] counsel in connection with the present matter, and [Appellant's] "Summary of Unpaid Rent, Common Area Maintenance Expenses and Late Fees, Unamortized Build-out Costs, Realtor Commissions and Counsel Fees."
>
> The latter exhibit postulated a total of unpaid Monthly Installments of Rent (including rent for September, 2017) in the amount of $53,389.28, a total of Unpaid Common Area Expenses in the amount of $13,050.00, Late Fees in the amount of $1,750.00, Unamortized Cost of Build-Out for [Appellee] in the amount of $25,917.62, Unamortized Cost of Build-Out for the replacement tenant in the amount of $76,562.00, Realtor Commission related to [Appellee's] tenancy in the amount of $35,924.26, Realtor Commission related to the replacement tenant's tenancy in the amount of $85,678.78, and Counsel Fees in the amount of $29,227.19, for a total of $321,499.13. No [Appellee's] exhibits were introduced at the hearing.
>
> The testimony of the only witness at the hearing was provided by John Ortenzio, who was called on behalf of [Appellant], and may be summarized as follows: Mr. Ortenzio was one of three owners of [Appellant], a limited liability company, and was an employee of the property management company that managed the subject property owned by [Appellant]. Notwithstanding the lease between [Appellant] and [Appellee], [Appellee] never took possession of the leased premises, his attempts to contact [Appellee] concerning the matter were unsuccessful, the replacement tenant began its occupancy on October 1,

2017, the replacement tenant's rental payments were greater than [Appellee's], and the term of its lease was longer than [Appellee's], and the exhibits admitted on behalf of [Appellant] at the hearing were factually correct.

With specific reference to build out costs, [Appellant] had incurred expenses related to [Appellee's] tenancy in the amount of $25,927.62 and expenses related to the replacement tenancy in the (corrected) amount of $97,537.37. Build out expenses were expected to be recaptured through a tenant's rental payments.

With specific reference to realtors' commissions, they were similarly expected to be recaptured through a tenant's rental payments. Typically, a commission payment was due at the time of execution of a lease and the payment to the owner's broker was then shared with the tenant's broker. In the case of [Appellee's] lease, the broker for [Appellant] shared the fee, which varied percentage-wise over the term of the lease, with the broker for [Appellee], and in the case of the replacement tenant's lease, the broker for [Appellant] similarly shared the fee, which remained constant percentage-wise over the term of the lease, with the broker for the replacement tenant.

(Trial Court Opinion, 11/23/20, at 12-14). At the conclusion of the hearing, the trial court set a briefing schedule for the parties.[2]

On November 23, 2020, the court ruled on the pending motion to open or strike. Specifically, it revised the judgment and (1) omitted build out expenses related to Appellee's tenancy; (2) omitted brokerage commissions related to Appellee's tenancy; (3) omitted build out expenses related to the

_____

[2] After receiving the parties' briefs, the court noted that it was apparent from Appellant's brief that Appellant no longer sought to increase its claim for build out expenses related to the replacement tenant's tenancy beyond the initially claimed $76,562.00. It explained that Appellant continued to request build out expenses for Appellee's tenancy in the amount of $25,917.62.

- 13 -

replacement tenant's tenancy; (4) omitted brokerage commissions pertaining to the replacement tenant's tenancy; and (5) omitted rent for September 2017. The court rejected Appellee's argument that it should be entitled to a credit for excess rent anticipated from the replacement tenant.[3]

Appellant timely filed a notice of appeal on December 22, 2020. That same day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied on December 31, 2020.

Appellant raises the following issues for our review:

> Whether the [t]rial [c]ourt erred as a matter of law, raising *sua sponte*, that the warrant of attorney contained in the confession of judgment in the Lease limited [Appellant's] right to recovery solely to rent, attorney fees and costs and did not include other types of damage and, as a result, foreclosed [Appellant] from reducing to judgment other types of damages by use of the warrant of attorney contained in the confession of judgment.
>
> Whether the [t]rial [c]ourt erred, as a matter of law, in raising issues not raised by [Appellee] in its pleadings or at trial and in finding that [Appellant], as a result of its exhaustion of the warrant of attorney, was foreclosed from amending the Complaint for Confession of Judgment to include: (1) the $25,917.62 for improvement build-out costs for [Appellee]'s benefit; (2) the additional $20,975.37 in improvement build-out costs to secure the replacement tenant; (3) the broker's commission of $35,924.26 for

---

[3] Ultimately, the court revised the confession of judgment to provide solely for unpaid monthly installments of rent in the amount of $45,651.88, unpaid common area expenses in the amount of $13,050.00, late fees in the amount of $1,750.00, attorney fees in the amount of $6,045.19, costs in the amount of $46.00, and prejudgment interest at the rate of .83% per month from March 1, 2017, to August 31, 2017.

securing [Appellee]'s lease; and (4) the broker's commission of $85,678.79 for securing the replacement tenant on the basis that while they were not the same damages, they were all "a type of damage" that had been previously listed in the Complaint for Confession of Judgment filed on August 21, 2018.

Whether the [t]rial [c]ourt erred as a matter of law or committed an abuse of discretion where it concluded that the broker's commission of $35,924.26, related to [Appellee's] lease was prohibited as an amendment to the Complaint for Confession of Judgment as the commission was not owed by [Appellant] because [Appellee] never took possession of the leased premises and as a result the debt was never legally owed by [Appellant] and thus could never be recouped by [Appellant] from [Appellee].

Whether the [t]rial [c]ourt erred as a matter of law in finding that the improvement build-out costs and the broker's commission incurred by [Appellant] to secure both [Appellee] and the replacement tenant, were damages that could not be assessed against [Appellee] as these costs, in part, were both being recouped by [Appellant] with each rent payment it received from the replacement tenant and to enter judgment would represent a double recovery.

Whether the [t]rial [c]ourt erred as a matter of law in refusing to allow [Appellant]'s Amendment of the Complaint to include the rent owed for September, 2017 as the warrant of attorney contained in the confession of judgment limited the confession of rent to six (6) month increments and the Complaint filed on August 21, 2018 had already sought rent for the months March, 2017 through August, 2017, a period of six (6) months.

(Appellant's Brief at 4-5).

We review an order ruling on a petition to open or strike a confessed judgment for an abuse of discretion or error of law. *Ferrick v. Bianchini*, 69 A.3d 642, 647 (Pa.Super. 2013). Our scope of review on appeal is "very narrow" and we will overturn the trial court's decision only if the court abused

its discretion or committed manifest error. *Atlantic Nat'l Trust, LLC v. Stivala Invs., Inc.*, 922 A.2d 919, 925 (Pa.Super. 2007) (citation omitted). However,

> "Whether a judge has correctly interpreted a writing and properly determined the legal duties which arise therefrom is a question of law for the appellate court." *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 263, 705 A.2d 422, 426 (1997). The legal effect or enforceability of a contract provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard. *Id. See also Patriot Commercial Leasing Co., Inc. v. Kremer Restaurant*, 915 A.2d 647 (Pa.Super. 2006), *appeal denied*, 597 Pa. 720, 951 A.2d 1166 (2008). "A cornerstone principle of contract interpretation provides that where the words of the document are clear and unambiguous, we must 'give effect' to the language." *Tindall v. Friedman*, 970 A.2d 1159, 1165 (Pa.Super. 2009). Likewise, if the matter under review involves the interpretation of the Pennsylvania Rules of Civil Procedure, we have before us a question of law, where our standard of review is *de novo* and our scope of review is plenary. *Boatin v. Miller*, 955 A.2d 424, 427 (Pa.Super. 2008).

*Midwest Financial Acceptance Corp. v. Lopez*, 78 A.3d 614, 624 (Pa.Super. 2013).

"[A] warrant of attorney is a contractual agreement between the parties and the parties are free to determine the manner in which the warrant may be exercised." *Neducsin v. Caplan*, 121 A.3d 498, 505 (Pa.Super. 2015), *appeal denied*, 635 Pa. 726, 131 A.3d 492 (2016) (citation omitted). Judgment entered by confession "must be 'made in rigid adherence to the provisions of the warrant of attorney; otherwise, such judgment will be stricken.'" *Id.* (quoting *Dollar Bank, Federal Sav. Bank v. Northwood*

*Cheese Co., Inc.*, 637 A.2d 309, 311-12 (Pa.Super. 1994), *appeal denied*, 539 Pa. 692, 653 A.2d 1231 (1994)). "A warrant to confess judgment must be explicit and will be strictly construed, with any ambiguities resolved against the party in whose favor the warrant is given." *Neducsin, supra* (citation omitted).

In its first issue, Appellant argues the trial court improperly found *sua sponte* that the broker's commissions related to securing Appellee and the replacement tenant, and the build out expenses for Appellee and the replacement tenant, were beyond the scope of the warrant of attorney. Appellant asserts the court erroneously concluded that the warrant of attorney did not encompass confession of judgment damages beyond rent, attorney fees, and costs. Appellant claims Appellee did not raise this issue in its pleadings. Appellant maintains the court's actions deprived it of an opportunity to address a defense that Appellee had not raised or argued. Essentially, Appellant contends the court improperly acted as an advocate for Appellee by raising a defense on its behalf. Appellant emphasizes that "the parties had filed various pleadings, a set of Stipulations, Pre-Trial and Post-Trial Briefs together with a hearing on issues which they could not reach a stipulation all of which were intended to narrow the issue[s] and none of which raised [a]n issue as to the scope of the damages included in the warrant of attorney." (Appellant's Brief at 21). Appellant concludes the court erred by precluding it from recovering damages beyond rent, costs, and attorney's

fees, and this Court must reverse.  We agree.[4]

"[A] court should open a confessed judgment if the petitioner promptly presents evidence on a petition to open which in a jury trial would require that the issues be submitted to the jury." **Stahl Oil Co., Inc. v. Helsel**, 860 A.2d 508, 512 (Pa.Super. 2004), *appeal denied*, 584 Pa. 709, 885 A.2d 43 (2005). "A petitioner must offer clear, direct, precise and believable evidence of a meritorious defense, sufficient to raise a jury question." **Id.**

> Pennsylvania Rule of Civil Procedure 2959(a) states, in pertinent part that "all grounds for relief whether to strike off the judgment or to open it must be asserted in a single petition." Furthermore, Pa.R.Civ.P. 2959(c) states that "[a] party waives all defenses and objections which are not included in the petition or answer."

**Stahl Oil Co., Inc., supra** at 515.  **See also Davis v. Woxall Hotel, Inc.**, 577 A.2d 636, 639 (Pa.Super. 1990) (explaining that defenses to confessed judgment not contained in petition to open or strike judgment are waived).

Furthermore, it is well established that "[a]bsent fraud or unconscionability, courts should not set aside terms on which sophisticated parties agreed." **Pops PCE TT, LP v. R & R Rest. Grp., LLC.**, 208 A.3d 79, 87 (Pa.Super. 2019) (citing **John B. Conomos, Inc. v. Sun Co.**, 831 A.2d 696, 708 (Pa.Super. 2003)).

---

[4] In its brief, Appellant also asserts that the court improperly raised the defense of "double recovery" *sua sponte*, where Appellee did not raise that defense in its pleadings.  Appellant, however, did not include this argument in its 1925(b) statement, so it is waived.  **See** Pa.R.A.P. 1925(b)(4)(vii) (stating: "Issues not included in the statement…are waived").

Here, the record reflects that Appellee filed a petition to strike or open, in accordance with Rule 2959, which Appellee later amended, raising various grounds for relief. Significantly, Appellee did not raise a defense or objection concerning whether the scope of the warrant of attorney encompassed the ability to confess judgment for build out expenses or brokerage fees. Thus, Appellee waived this argument, and the court should not have struck the judgment on the basis that the claimed build out expenses and brokerage fees were beyond the scope of the warrant of attorney clause. **See Neducsin, supra**; **Stahl Oil Co., Inc., supra**.

Moreover, even if not waived, the language of the Lease confirms that the scope of the warrant of attorney encompassed damages beyond just rent and associated costs.

It is well-established that:

> [C]ontract construction and interpretation is generally a question of law for the court to decide.
>
> A contract's language is unambiguous if it can be determined without any other guide than knowledge of the simple facts on which its meaning depends. When the contract is clear and unambiguous, the meaning of the contract is ascertained from the writing alone....
>
> > Whether a judge has correctly interpreted a writing and properly determined the legal duties which arise therefrom is a question of law for the appellate court. The legal effect or enforceability of a contact provision presents a question of law accorded full appellate review and is not limited to an abuse of discretion standard.

**Pops PCE TT, LP, supra** at 87 (quotation marks and citation omitted).

Here, the Lease executed by the parties provides that upon default Appellee would be liable for "the rent and additional rent...**together with all other expenses** incurred by [Appellant] in connection with [Appellee's] default..." (Lease at § 21.02(b)) (emphasis added). This provision clearly and unambiguously sets forth that the warrant of attorney encompasses more than simply rent and costs, but rather, may be used to collect damages for "all other expenses incurred...in connection with [Appellee's] default." (**Id.**) Appellant and Appellee, both sophisticated parties, agreed upon the language when they entered into the lease. *See Pops PCE TT, LP, supra*. Therefore, we hold that the trial court erred when it *sua sponte* raised a concern about the scope of the warrant of attorney and found that it did not include damages in excess of rent and costs.

In its second issue, Appellant challenges the trial court's denial of its motion to amend the judgment to include damages related to the build out expenses incurred with respect to Appellee's lease.[5] Appellant claims Appellee did not object to these damages and the court erred by denying them *sua sponte*. Appellant asserts that it did not seek damages related to the build

---

[5] The question presented in Appellant's second issue states that the court improperly denied its amendment of the complaint to include 1) build out expenses related to Appellee's lease, 2) build out expenses related to the replacement tenant's lease, 3) broker's commission for securing Appellee's lease, and 4) the broker's commission for securing the replacement tenant lease. However, in the argument portion of its brief, Appellant discusses only the alleged error in denying Appellant's amendment to include build out expenses for Appellee's lease. Therefore, we limit our discussion to the same.

- 20 -

out expenses associated with Appellee's lease prior to its motion to amend the complaint for confession of judgment. Appellant contends the court erroneously concluded that because Appellant previously sought damages related to the **replacement tenant's** build out expenses, Appellant was precluded from seeking "similar" damages related to the build out expenses associated with **Appellee's lease** in the amendment to the complaint. Appellant insists that the debt set out in Appellant's motion to amend the judgment with respect to Appellee's build out expenses is different and distinct than the debt set out in the complaint for confession of judgment against which the previous judgment had been filed.

Appellant further maintains that the warrant of attorney specifically provides that it is not exhausted by "one or more exercises thereof and where the debt attempted to be collected by each action is different and distinct from debt previously confessed, the [c]ourt's rationale that the warrant of attorney has been exhausted, fails." (Appellant's Brief at 27). Appellant avers the parties specifically negotiated the warrant of attorney to confess judgment to be exercisable on multiple occasions. Appellant claims the plain language of the lease empowered Appellant to exercise the warrant of attorney to confess judgment whenever there was an occurrence of an event of default. Appellant concludes the court erred by precluding it from obtaining damages for build out expenses related to Appellee's lease, and this Court must reverse. We agree.

We review a trial court's revision of a confessed judgment for an abuse of discretion or an error of law. *Ferrick, supra*; *Atlantic Nat'l Trust, LLC v. Stivala Invs., Inc., supra*. Further, "[t]he decision of the trial [c]ourt to deny a motion to amend a complaint is within the sound discretion of the trial court, and the trial court's determination will not be disturbed absent an abuse of that discretion." *Ferraro v. McCarthy–Pascuzzo*, 777 A.2d 1128, 1132 (Pa.Super. 2001) (citations omitted).

Pennsylvania Rule of Civil Procedure 1033 sets forth the rules concerning amendment of pleadings. It states, *inter alia*, "a party, either by filed consent of the adverse party or by leave of court, may at any time change the form of the action, correct the name of a party or amend his pleading." Pa.R.C.P. 1033(a).

> It has always been held **that formal defects, mistakes and omissions** in confessions of judgment may be corrected by amendment where the cause of the action is not changed, where the ends of justice require the allowance of such amendment, and where the substantive rights of defendant or of any third persons will not be prejudiced thereby.

*Dime Bank v. Andrews*, 115 A.3d 358, 365 (Pa.Super. 2015) (quoting *West Penn Sand & Gravel Co. v. Shippingport Sand Co.*, 367 Pa. 218, 80 A.2d 84, 86 (1951)) (emphasis in original). An amendment to a complaint is not permitted where it is against an affirmative rule of law. *TCPF Ltd. P'ship v. Skatell*, 976 A.2d 571, 575 (Pa.Super. 2009).

This Court has considered the issue of amending a complaint for

confession of judgment concerning same or similar damages in **TCPF Ltd.**

**P'ship, supra**. There, we explained:

> It is clear that, under the law of Pennsylvania, a warrant of attorney to confess judgment may not be exercised twice for the same debt. **B. Lipsitz Co. v. Walker**, 522 A.2d 562, 566 (Pa.Super. 1987), *appeal granted*, 515 Pa. 617, 531 A.2d 426 (1987) ("severable portions of a debt can be sought to be collected with the use of a single warrant of attorney as each become due; provided, of course, the instrument is not used to collect the same portion of the debt already confessed."); **American Bowling Club, Inc. v. Kanefsky**, 370 Pa. 136, 140, 87 A.2d 646, 648 (1952) ("where a power of attorney authorizes a confession of judgment and the power is once exercised, the power is thereby exhausted.").

*Id.* at 575 (footnote and emphasis omitted; citation formatting provided). In

**TCPF Ltd. P'ship**, however, this Court limited its holding to the use of a

warrant of attorney several times to collect the **same portion of the debt**

already confessed. *Id.* at 575–76.

Instantly, the trial court denied Appellant's motion to amend the second

confessed judgment for the following reasons:

> First, build out expenses as a type of damage for the period in question had been included in the judgment as initially filed and could not be revised by way of amendment. Second these particular build out expenses were not a consequence of [Appellee's] breach, and their recovery in addition to rent for the period in question would under the circumstances represent a double recovery for the same debt. Third, the warrant of attorney in the lease authorized a confession of judgment for "rent," costs and attorney fees; it is unclear that it was intended to encompass special damages other than costs and attorney fees, such as build out expenses.

(Trial Court Opinion at 19).

Here, Appellant's second complaint for confession of judgment included an item labeled "Un-amortized Costs of Build Out of Tenant Improvements" which "referred to expenses that were allegedly incurred by [Appellant] in making improvements to the premises to accommodate a replacement tenant." (Trial Court Opinion at 8) (footnote omitted). In Appellant's petition to amend the complaint, Appellant sought to add an item of damages concerning build out expenses incurred to accommodate Appellee. (*Id.* at 9) (citing Motion to Amend Judgment, 9/03/19).

We conclude that these two items represent two distinct debts, one for build out expenses incurred as a result of Appellant improving the premises for **Appellee's** anticipated tenancy, and the second for build out expenses incurred as a result of Appellant improving the premises for the **replacement tenant's** tenancy. Therefore, this Court's holding in *TCPF Ltd. P'ship, supra*, that a warrant of attorney may not be exercised twice for the same debt, does not bar amendment of the complaint for confession of judgment to include debt incurred for Appellee's build out expenses. *See TCPF Ltd. P'ship, supra* at 575.

In addition, the trial court erred in denying Appellant's motion to amend the second complaint for confession of judgment based on its analysis that the scope of the warrant of attorney does not include such damages. As discussed above, Pennsylvania Rule of Civil Procedure 2959 requires that all grounds for relief be asserted in a single petition. *See* Pa.R.C.P. 2959(a)(1).

It further explains that "[a] party waives all defenses and objections which are not included in the petition or answer." Pa.R.C.P. 2959(c). ***See also*** Pa.R.C.P. 2960 (limiting scope of proceedings upon opening of judgment). Because Appellee did not raise an objection to Appellant's amendment based on the scope of the warrant of attorney, the trial court erred in considering whether the scope of the warrant of attorney included damages for build out costs for Appellee.[6]

In its third issue, Appellant argues the trial court erred by *sua sponte* concluding that Appellant was not responsible for the broker's commission related to the procurement of Appellee's lease. Appellant asserts the trial court decided that Appellant's payment of the broker's commission was subject to a condition precedent of the occupancy of the premises by the tenant, which did not occur. Appellant contends the court erroneously concluded that Appellant had no legal obligation to pay the broker's commission where Appellee never took occupancy. Appellant emphasizes that the parties stipulated that Appellant paid the commission for the broker who secured Appellee as a tenant in the amount of $35,924.20. Appellant submits the court improperly held that recovery of the broker's commission from Appellee would constitute a double recovery as the broker's commission was

---

[6] We consider the court's conclusion regarding whether damages for Appellee's build out expenses constitutes double recovery in our analysis of Appellant's fourth issue.

built into the rent payments owed by Appellee and would be recouped from the rent owed by Appellee.[7]  Appellant also challenges the court's finding that the warrant of attorney does not encompass special damages beyond rent, costs, and attorney fees.  Appellant complains that Appellee did not raise any of the grounds on which the court based its decision in its pleadings.  Appellant insists that "none of the facts upon which the [t]rial [c]ourt based its holding are found in the [r]ecord or in the pleadings."  (Appellant's Brief at 31).  Appellant stresses that no evidence offered at the hearing related to or questioned the terms of the contract between Appellant and its broker.  Specifically, Appellant states "[a]t no time did the [t]rial [c]ourt or [Appellee] raise an issue of whether the terms of the contract provided that [Appellee] had to occupy the leased premises prior to the commission being earned."  (*Id.* at 34).  Appellant concludes the court improperly precluded damages related to the broker's commission for Appellee's tenancy, and this Court must reverse.  We disagree.

A condition precedent is a condition which must occur before a duty to perform under a contract arises.  ***Davis v. Gov't Employees Ins. Co.***, 775 A.2d 871, 874 (Pa.Super. 2001), *appeal denied*, 571 Pa. 706, 812 A.2d 1230 (2002).  The parties do not need to utilize any particular words to create a condition precedent; however, an act or event designated in a contract will be

---

[7] We address this specific contention in our analysis of Appellant's fourth issue, which also raises this claim of error.

construed as a condition precedent only where it clearly appears to be the parties' intention. *Id.* *See also Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 648 A.2d 1218, 1220 n.3 (Pa.Super. 1994) (rejecting argument that parties were required to use express language such as "state that performance will only come due 'if' a certain event occurs; or 'on condition that' a certain event occurs; or 'provided' that a certain event occurs" to set forth condition precedent).

We look to the language of the contract itself to discern whether it clearly appears that the parties intended to create a condition precedent:

> When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.

*Melton v. Melton*, 831 A.2d 646, 653-54 (Pa.Super. 2003) (quoting *Profit Wize Mktg. v. Wiest*, 812 A.2d 1270, 1274 (Pa.Super. 2002)).

Instantly, the trial court found that Appellant was not entitled to damages related to the broker's commission for Appellee's tenancy because occupancy of the premises was a condition precedent to Appellant's duty to pay such commission. The court explained:

> [Appellant's] responsibility for assumption of this debt was subject under the lease to a condition precedent of occupancy by the tenant, which did not occur; and as to payment of the commission of [Appellant's] broker, in the absence of the listing agreement between [Appellant] and

- 27 -

its agent it is difficult to conclude that [Appellant's] payment was not also made on the basis of a moral as opposed to legal obligation.

(Trial Court Opinion at 20).

At the outset, we agree with the trial court that Appellant's failure to include a copy of the listing agreement between Appellant and its agent has significantly limited Appellant's claim that it had a duty to pay the brokerage commission upon lease signing. Without such agreement in the record, our review is limited to the language of the Lease between the parties as it pertains to Appellant's payment of the brokerage commission. The Lease contains the following provision:

> [Appellant] agrees that it recognizes Colliers International as [Appellee's] sole representative and **a full brokerage commission shall be due and payable upon occupancy**. [Appellant] shall pay Colliers International a fee equal to six percent (6%) of the first year and five percent (5%) of the second year, four percent (4%) of the third year and three percent (3%) of all remaining years thereafter. In the event [Appellee] leases additional space or exercised its renewal options, the commission calculation **shall be restarted from the date of occupancy**. Said commission shall be payable when option/expansion is executed. The commission calculation shall be based on the total of the net rental amount.

(Lease at 4 ¶ 24.20) (emphasis added).

Considering the express language of the Lease, we agree with the trial court that the parties demonstrated that their intent was for payment of the brokerage commission to become due only upon the occupancy of the premises. **See Melton, supra** at 653–54. Not only does the Lease clearly

state that the brokerage commission shall be "due and payable **upon occupancy**," but the Lease later refers to occupancy of the premises again as the starting point for calculation of any further commission, should Appellee lease additional space or renew the lease. (**See** Lease at 4 ¶ 24.20) (emphasis added).

At the hearing, Appellant did not introduce evidence related to the contract between itself and the broker to refute condition precedent of "upon occupancy" stated in the Lease. Therefore, we agree with the trial court that Appellant was only required to pay the brokerage commission upon Appellee's occupancy of the premises. Because Appellee defaulted on the Lease prior to occupying the premises, the brokerage commission related to Appellee's tenancy never became due. Accordingly, Appellee's default did not cause Appellant to incur damages related to the brokerage commission because, based on the terms of the Lease, Appellant was not obligated to pay the commission where Appellee never took occupancy of the premises. As such, the trial court did not err when it barred Appellant from seeking separate damages for the brokerage commission related to Appellee's tenancy. **See Ferrick, supra**; **Atlantic Nat'l Trust, LLC, supra**.

In its fourth issue, Appellant argues the court erroneously concluded that the broker commissions related to Appellee and the replacement tenant's tenancies, and the improvement build-out expenses related to each lease, were already being recouped by the rent payments owed from Appellee and

the rent being paid from the replacement tenant, because the commissions and build-out expenses were built into the rent payments for the respective leases. Specifically, Appellant contends that the trial court's revised judgment should have included (1) build out expenses for Appellee's lease in the amount of $25,917.62, (2) brokerage fees for the replacement tenant in the amount of $85,678.78, and (3) build out expenses for the replacement tenant in the amount of $97,537.37. (Appellant's Brief at 34-35).[8]

Appellant posits that the trial court's presumption that Appellant is recouping the loss through rent payments "is built upon a set of assumed premises which are not present in this case." (*Id.* at 35). The premises are either: (1) Appellee paid the entire amount of unpaid rent owed under the Lease equaling $486,708.08 for the period March 1, 2017 through November 30, 2021, from which Appellant recouped the entirety of its costs for brokers' commissions and improvement build out costs, which Appellee did not do; or (2) Appellant confessed the judgment of the acceleration of the rent to the end of the term of Appellee's lease from which it would recoup the brokers' commission and improvement build out costs, which is also something Appellant did not do. (*Id.* at 35). Appellant emphasizes that a double

---

[8] Although Appellant additionally seeks brokerage commission damages for Appellee's lease in the amount of $35,924.26, as discussed above, Appellant is not entitled to these damages because the condition precedent to their being owed was not met. Accordingly, we do not consider whether recovery of this fee would constitute double recovery.

recovery would only occur if it had received payment of all the rent under the Lease or had confessed judgment to recover the rent due together with the balance of the term of the rent due from Appellee, from which it would then recoup its cost from broker commission and build out expenses.

Appellant contends the court's rationale is incorrect where Appellant never received any rent from Appellee, and Appellant is not seeking a judgment against Appellee for rent for the balance of the entire term of the Lease from which to recoup these costs. Appellant emphasizes the language in the Lease stating that upon default, Appellee would be responsible for "all other amounts in addition to los[t] rent and all the damages proximately caused by [Appellee's] failure to perform its obligations under the Lease or which in the ordinary course of things, would be likely to result." (***Id.*** at 37-38) (quoting Lease at § 21.02(c)). Appellant insists it is Appellee who breached the contract and caused Appellant to incur immediate out-of-pocket expenses, but it is Appellant who, as a result of the court's ruling, is left without a remedy against Appellee. Appellant concludes the court erred by finding that Appellant sought damages that would constitute a double recovery, and this Court must reverse. We agree in part and disagree in part.

"It is a basic tenet of our system of civil justice that a plaintiff may not obtain a double recovery for a single wrong." ***Pops PCE TT, LP, supra*** at 89 (citing ***Homart Dev. Co. v. Sgrenci***, 662 A.2d 1092, 1100 (Pa.Super. 1995)). As our Supreme Court has recognized, the doctrine of election of remedies

provides that "a claimant cannot simultaneously recover damages based on two different liability findings if the injury is the same for both claims, thus creating a double recovery." ***Gamesa Energy USA, LLC v. Ten Penn Ctr. Associates, L.P.***, 655 Pa. 351, 364, 217 A.3d 1227, 1235 (2019) (citation omitted).

Here, the trial court explained that it denied Appellant's motion to amend the second confessed judgment to add build out expenses for Appellee's tenancy. Specifically, the court noted that "these particular build out expenses were not a consequence of [Appellee's] breach, and their recovery in addition to rent for the period in question would under the circumstances represent a double recovery for the same debt." (Trial Court Opinion at 19).

Our review of the record reveals that, Appellant paid build out expenses related to Appellee's tenancy in the amount of $25,917.37. At the hearing, Appellant's witness explained that the costs of Appellee's build out would have been recovered through the rent payments. (N.T. at 19, 22-23). Hence, if Appellee had not defaulted and had instead finished the Lease and paid as scheduled, Appellant would have recaptured the entirety of the expense.

Here, however, several months of Appellee's rent are included in the confessed judgment. Therefore, recovery of the entire amount of build out expenses would amount to a partial double recovery. Accordingly, to ensure that there is no double recovery, the portion of the build out expenses covered

by the monthly rental payments in the first and second confession of judgments must be subtracted from the total build out expenses.[9]

Concerning build out expenses related to the replacement tenant's tenancy, the trial court held that "as of the filing of the second confessed judgment this debt was being collected through the replacement tenant's rent and until such time as that circumstance ceased[,] collection of the obligation from [Appellee] would constitute a double recovery." (Trial Court Opinion at 20). We agree with the trial court's reasoning.

We acknowledge the trial court's finding that "whether the [replacement] tenant will fulfill its obligations under its 10-year lease is…highly speculative," and observe that it is likewise highly speculative whether the replacement tenant will default on its obligations on its lease. (Trial Court Opinion at 20). Thus, the trial court correctly found that recovery of damages that would otherwise be paid in the replacement tenant's lease would constitute a double recovery if included in the judgment without the replacement tenant having defaulted on its lease.

In its final issue, Appellant argues the court erred by denying Appellant damages for rent owed by Appellee for September 2017 where the warrant of attorney limited the confession of judgment to six-month increments, and the complaint filed on August 21, 2018 had already sought rent for the six-month

_____

[9] Appellee's build out expenses, $25,917.37 split equally over the 66-month Lease, equates to $392.69 per month.

period from March 2017 through August 2017. Appellant claims that under the warrant of attorney, it could not include unpaid rent for September 2017 in the August 21, 2018 complaint. Appellant emphasizes that the warrant of attorney permits judgment to be confessed "from time-to-time and as often as there is an occurrence of an Event of Default which was not cured by [Appellee]." (Appellant's Brief at 43) (citation omitted). Appellant concludes the court's refusal to allow it to recover unpaid rent for September 2017 was error, and this Court must reverse. We disagree.

Preliminarily, appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. Regarding the argument section of an appellate brief, Rule 2119(a) provides:

> **Rule 2119.  Argument**
>
> **(a) General rule.**—The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a). It is the duty of an appellant to present argument in its brief which "contain[s] such discussion and citation of authorities as are deemed pertinent." *9795 Perry Highway Mgmt., LLC v. Bernard*, 273 A.3d 1098, 1103 (Pa.Super. 2022) (citation omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Id.* (citations omitted). "When deficiencies in a brief hinder our ability to conduct

meaningful appellate review, we can dismiss the appeal entirely or find certain issues to be waived." *Id.* (citations omitted).

Here, Appellant failed to support this argument with citation to and discussion of pertinent authority. Specifically, Appellant claimed it was entitled to amend the amount claimed in the unpaid monthly rent category of its complaint to include rent for September 2017, but Appellant did not cite any pertinent authority to support its attempt to correct the amount pled.[10] Nor did Appellant address whether amending the confession of judgment would serve "the ends of justice" or whether such amendment would affect the substantive rights of the parties. *See Dime Bank, supra* at 365 (explaining formal defects, mistakes and omissions in confession of judgment may be corrected by amendment where cause of action is not changed, where

---

[10] In its reply brief, Appellant distinguished the instant case from *TCPF Limited Partnership, supra*, arguing that in *TCPF*, the plaintiff sought judgment for the entire term and was precluded from amending the complaint to correct its error in pleading the incorrect amount for accelerated rent. (Appellant's Reply Brief at 21-22). Appellant asserts that it was not correcting the amount of rent pled, but rather was seeking to add an additional month of rent to the complaint; hence, it was not barred by the court's holding in *TCPF*, because it had not exhausted the warrant of attorney by seeking accelerated rent for the entire period. (*Id.* at 22).

The trial court, however, noted that Appellant was, in fact, correcting the amount of rent pled for unpaid monthly installments, and denied Appellant leave to amend the complaint. In neither its initial appellate brief, nor its reply brief did Appellant address whether this denial of leave to amend was an abuse of the court's discretion. Therefore, even considering the arguments set forth in Appellant's reply brief, it has still not developed with citation to relevant authority its essential argument that the court erred or abused its discretion.

ends of justice require allowance of such amendment, and where substantive rights of defendant or of any third persons will not be prejudiced thereby). In other words, Appellant failed to explain why the trial court's denial of leave to amend rose to the level of an abuse of discretion, rendering this issue waived. *See Ferraro v. McCarthy–Pascuzzo*, 777 A.2d 1128, 1132 (Pa.Super. 2001) (stating: "The decision of the trial [c]ourt to deny a motion to amend a complaint is within the sound discretion of the trial court, and the trial court's determination will not be disturbed absent an abuse of that discretion"). *See also 9795 Perry Highway Mgmt., LLC, supra*.

In sum, the trial court should have permitted Appellant to amend the complaint to include damages for build out costs related to Appellee's lease; however, the damages claimed must be modified to deduct that portion of build out expenses covered by monthly rental payments for which Appellee has confessed judgment. The trial court did not err in revising the judgment to omit the brokerage commission for Appellee's lease, or the build out expenses and brokerage commission related to the replacement tenant's lease. Appellant waived its issue concerning the court's denial of the September 2017 unpaid rent. Finally, because the amount of the judgment will change, the attorney fees and pre-judgment interest awarded must be altered to reflect the changed judgment. Based on the foregoing, we affirm in part, reverse in part, and remand for further proceedings.

Order affirmed in part and reversed in part. Case remanded for further

proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judge Olson concurs in the result.

Judge Bowes files a concurring and dissenting memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/10/2023