705 A.2d 422

**Antonio N. RICCIO, Appellant,**

v.

**AMERICAN REPUBLIC INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1997.

Decided Dec. 23, 1997.

256

Charles W. Garbett, New Castle, for Antonio N. Riccio.

Jon Hogue, Pittsburgh, for American Republic Ins. Co.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

This Court granted *allocatur* in this matter in order to address two issues. The first issue is whether the coordinate jurisdiction rule barred a judge involved in the post-trial motion phase of the litigation *sub judice* from reversing the ruling of another judge of a coordinate court in the same matter. The second issue is, if the coordinate jurisdiction rule does not act as a bar, whether the term "spine", as used in the exclusion provision of the medical insurance policy issued by appellee to appellant, included the intervertebral disc injury suffered by appellant. While we find that the coordinate jurisdiction rule under the facts of this matter does not bar the post-trial judge from reversing the ruling of another judge of the same court in the same case, we agree with the Superior Court that the term "spine", which was contained in the exclusion provision of the medical insurance policy in

question, encompassed the intervertebral disc injury suffered by appellant.

The relevant facts are that on October 16, 1990, appellant applied to appellee for medical insurance for his two children and himself. In the medical history section of his insurance application concerning the back/spine, appellant averred that neither he nor his two daughters had been treated or diagnosed over the last ten years with any type of back pain, curvature or disc problems. However, appellant's insurance application did indicate that he had visited Ellwood City Hospital's emergency room in June of 1986 complaining of stomach pains after eating at a fast-food restaurant.

On October 18, 1990, two days after making the application for insurance with appellee, but before appellee issued the medical insurance policy, appellant suffered a herniated disc while attempting to lift a pizza oven at the pizzeria he owned. On October 19, 1990, appellant underwent a surgical microdisectomy[1] as a result of the injury.

Appellee subsequently received appellant's medical insurance application. In response to appellant's admission that he had visited Ellwood City Hospital's emergency room in 1986, appellee requested appellant's medical records from the hospital. Included in Ellwood City Hospital's medical records for appellant was an x-ray of appellant's spine. On November 20, 1990, appellee issued a medical insurance policy to appellant which was retroactive to the application date of October 16, 1990. The insurance policy, however, contained the following explicit exclusion because of appellant's medical records:

> This policy provides all the stated benefits except for any loss incurred by or for Antonio N. Riccio which results from: hiatal or diaphragmatic hernia, arthritis, *any injury to, disease, disorder of, or treatment or operative repair of the spine,* or ulcer of the duodenum. (emphasis added).

1. In this surgical procedure, doctors surgically repaired and removed a portion of appellant's intervertebral disc.

Appellant accepted this medical insurance policy and made the appropriate premium payments in order to keep the policy in force.

Approximately ten months after appellant injured his back, appellant submitted medical bills to appellee totalling $10,-937.70 for the treatment of his herniated disc. On July 26, 1991, appellee denied appellant benefits based on the above-referenced exclusion provision contained in the medical insurance policy.

On May 18, 1992, appellant instituted an action against appellee in which he sought to recover his medical expenses for the treatment of his intervertebral disc problem from the medical insurance policy issued by appellee. Appellee answered appellant's complaint by denying coverage on the grounds that the medical expenses submitted by appellant were explicitly excluded by the language of the policy exclusion.

On October 13, 1994, the trial judge conducted a one-day non-jury trial. On October 20, 1994, the judge entered a verdict in favor of appellee. On that same day, the trial judge assigned to this matter filed an Opinion in Support of Verdict finding that appellee had no duty to provide coverage for appellant's claim on the grounds that the policy exclusion for spinal injuries included appellant's intervertebral disc problem.

Appellant filed a timely motion for post-trial relief that raised numerous theories which appellant believed warranted the grant of a new trial. On June 15, 1995, the trial judge recused himself from the case because scheduling conflicts made him unavailable to dispose of appellant's post-trial motions. In accordance with Rule 227.2 of the Rules of Civil Procedure,[2] appellant's post-trial motions were reassigned to another judge of the same Common Pleas Court ("post-trial judge"). On November 17, 1995, the post-trial judge issued a

2. Rule 227.2 provides, in pertinent part, that "all post-trial motions, and other post-trial motions shall be heard and decided by the trial judge ... If the trial judge for any reason cannot hear the matter, another judge shall be designated to act."

two-paragraph order which held that the trial judge had applied at trial an incorrect definition for the term "spine" contained in the policy exclusion. Because the post-trial judge concluded that the spinal column did not include intervertebral discs, the post-trial judge held that the medical insurance policy exclusion did not apply. Therefore, the post-trial judge granted appellant's post-trial motion and awarded appellant a new trial.

On appeal, the Superior Court reversed the post-trial judge's ruling. The Superior Court first found that the coordinate jurisdiction rule barred the post-trial judge from overruling the trial judge's previous ruling on the definition of the word "spine." Moreover, the Superior Court found that the trial judge applied a correct definition of the word "spine" in concluding that appellee had no duty to provide coverage on appellant's claim because of the policy exclusion for spinal injuries. Accordingly, the Superior Court reversed the post-trial judge's award of a new trial and remanded the matter to the post-trial judge to consider the merits of the other issues raised in appellant's post-trial motions that the post-trial judge had yet to consider. This Court granted allocatur in order to determine if the Superior Court erred in it application of the coordinate jurisdiction rule to this matter, and, if so, whether the term "spine" in the medical insurance policy exclusion included the disc problems appellant suffered from his October 18, 1990 injury.

This Court has long recognized that under the coordinate jurisdiction rule, judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. *Commonwealth v. Starr*, 541 Pa. 564, 573, 664 A.2d 1326, 1331 (1995). The coordinate jurisdiction rule is premised on the sound jurisprudential policy of fostering finality in pre-trial proceedings, thereby promoting judicial economy and efficiency. *Id.* This rule applies equally to civil and criminal cases and it falls within the "law of the case" doctrine. As this Court recently explained, the law of the case doctrine embodies the concept that:

[A] court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in the earlier phases of the matter. Among the related but distinct rules which make up the law of the case doctrine are that: ... upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Commonwealth v. Starr*, 541 Pa. at 574, 664 A.2d at 1331.

■ When determining whether the coordinate jurisdiction rule applies, the court is not guided by whether an opinion was issued in support of the initial ruling. *Goldey v. Trustees of the Univ. of Pennsylvania*, 544 Pa. 150, 155, 675 A.2d 264, 267 (1996). Instead, this Court looks to where the rulings occurred in the context of the procedural posture of the case. As this Court has explained:

Where the motions differ in kind, as preliminary objections differ from motions for judgment on the pleadings, which differ from motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion. However, a later motion should not be entertained or granted when a motion of the same kind has previously been denied, unless intervening changes in the facts or the law clearly warrant a new look at the question.

*Goldey*, 544 Pa. at 155–56, 675 A.2d at 267; *accord Commonwealth v. Starr, supra.* Thus, in order to determine whether the coordinate jurisdiction rule applies to this case, we must look to the procedural posture where the trial judge and the post-trial judge made their respective rulings.

■ Here, the trial judge made his ruling on the meaning of the word spine while rendering a verdict at the conclusion of the non-jury trial. The post-trial judge, however, made his ruling that the trial judge erred as a matter of law in defining the word spine during the post-trial motion process. Under the post-trial motion process, the judge considering the post-

trial motions can order a new trial pursuant to Rule 227.1(a)(1) of the Rules of Civil Procedure if he concludes that a factual or legal mistake was made at the trial level and that on consideration of the particular circumstances of the case, the mistake (or mistakes) formed a sufficient basis to order a new trial. *Morrison v. Dep't of Pub. Welfare*, 538 Pa. 122, 133, 646 A.2d 565, 571 (1994). Also, the fact that the trial in this case was a non-jury trial has no effect upon a party's right to seek post-trial relief in the form of a new trial since the Note to Rule 227.1 provides that a motion for post-trial relief can be filed following a trial by a judge without a jury. *See* Pa. R. Civ. P. 129(e) (a note to a rule may be used in construing the rule). Moreover, the fact that a different judge considered the post-trial motions in this case does not affect a party's ability to seek post-trial relief since as noted above, Rule 227.2 allows for the substitution of a judge on behalf of an unavailable trial judge, thereby placing the substituted judge in the same position as the trial judge. Based on these factors, we find that the post-trial motion process is a clearly distinct procedural posture from that of the trial judge rendering a verdict at the conclusion of a non-jury trial. Therefore, because the post-trial motion process is distinct procedurally from that of rendering a verdict following a non-jury trial and because the considerations of the judge are different at each procedural stage (rendering a verdict at the conclusion of trial versus correcting mistakes made during the earlier trial process), we hold that the coordinate jurisdiction rule does not apply to bar a substituted judge hearing post-trial motions from correcting a mistake made by the trial judge during the trial process. To hold otherwise and not allow a judge deciding post-trial motions to overrule legal errors made during the trial process (whether made by the reviewing judge or another judge who presided over the trial) would render the post-trial motion rules meaningless and the post-trial motion process would become nothing more than an exercise in futility. Accordingly, we hold that the Superior Court erred in ruling that the coordinate jurisdiction rule barred the post-trial judge from considering appellant's post-trial motions and reversing the trial judge.

Since the post-trial judge was within his powers to reverse the trial judge on post-trial motions, this Court must now examine whether the post-trial judge erred in finding that the trial judge erred as a matter of law in concluding that the word spine contained in the medical insurance policy exclusion provision included appellant's intervertebral disc problem. For the reasons described below, we uphold the Superior Court's finding that the post-trial judge erred.

As previously stated, a judge makes two determinations in deciding whether to grant a post-trial motion for a new trial. First, the judge must decide if a mistake was made at trial as to a factual, legal or discretionary matter. Second, the judge, in his discretion, must consider, under the circumstances of the case, whether the mistake was sufficient to warrant granting a new trial. *Morrison*, 538 Pa. at 133, 646 A.2d at 571.

■ Where, as here, the trial court articulates a single error (or a finite set of errors) as the grounds for granting a new trial, an appellate court's scope of review is limited to examining that particular error. *Id.* If the stated error concerns a question of law, it is reviewed on appeal as such. On the other hand, if the stated error involves a discretionary matter, it is reviewed on appeal for an abuse of discretion. *Id.* at 133–34, 646 A.2d at 571.

■ Here, the post-trial judge found that the trial judge erred in interpreting the word "spine" in the medical insurance policy exclusion provision to include appellant's intervertebral disc problem. Whether a judge has correctly interpreted a writing and properly determined the legal duties which arise therefrom is a question of law for the appellate court. *In re Estate of Livingston*, 531 Pa. 308, 317 n. 2, 612 A.2d 976, 981 n. 2 (1992). Thus, in this case, we must determine whether the post-trial judge erred as a matter of law in interpreting the wording of an exclusion provision contained in the medical insurance policy issued to appellant.

■ In interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language

is clear and unambiguous, the court must give effect to the language of the contract. However, if the policy provision is ambiguous, the policy provision must be construed in favor of the insured and against the insurer as the drafter of the instrument. *Bateman v. Motorists Mutual Ins. Co.*, 527 Pa. 241, 245, 590 A.2d 281, 283 (1991) (citing *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983)). Also, the words of the insurance policy must be construed in their natural, plain and ordinary sense. *Easton v. Washington County Ins. Co.*, 391 Pa. 28, 33, 137 A.2d 332, 335 (1958). Moreover, an insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument. *Smith v. Cassida*, 403 Pa. 404, 408, 169 A.2d 539, 541 (1961).

 Here, the medical insurance policy issued to appellant excluded coverage for "any injury to, disease, disorder of, or treatment or operative repair of the spine." Appellant disputes whether the definition of "spine" includes his intervertebral discs. The word spine is defined by Webster's New World Dictionary (2nd Ed.) as "the spinal column; backbone." A "backbone" is defined by Webster's as "the column of bones along the center of the back of man and many animals made up of separate bones (vertebrae) connected by muscles and tendons." The "vertebrae" is defined by Webster's as "any of the single bones or segments of the spinal column, articulating in the higher vertebrates with those adjacent to it by means of elastic fibrous disks." Based on these common definitions, we conclude that the natural, plain and ordinary meaning of the word "spine" in the exclusion provision of the medical insurance policy included appellant's intervertebral discs.[3]

3. This Court recognizes that Dorland's Medical Dictionary (23rd Ed.) defines the word "spine" as the "slender, thornlike process of bone." However, Dorland's is a specialized medical dictionary which should not apply to this interpretation of the medical insurance policy since a court's duty in interpreting words of a contract is to give the words a natural, plain and ordinary meaning. Moreover, other publications of a more technical nature support the view that the spine includes a person's discs. As noted by the trial judge, The Attorney's Textbook of Medicine states that: "[U]nderstanding the normal and pathologic

The conclusion that the word "spine" in the exclusion provision of the medical insurance policy was intended to include appellant's intervertebral discs is further supported by the circumstances surrounding the issuance of the policy. The spine exclusion was written into the policy based on appellant's medical records which were examined by appellee before writing the policy. The x-ray report that appellee received concerning appellant showed that appellant had a disc problem on the date of his insurance application which appellant's physician described as a "lumbar spine herniated disc." Moreover, the insurance application which appellant signed and submitted to appellee, and on which the medical insurance policy states formed the basis of issuing the policy, expressly defined the "back/spine" to included "disc problems."

Therefore, based on the natural, plain and ordinary meaning of the word spine, and the facts that indicate the policy exclusion in question was added because appellant's medical records showed the existence of a disc problem, we find that the clear and unambiguous intent of the medical insurance policy was to exclude coverage for injuries that appellant may suffer to his intervertebral discs. Thus, we conclude that the Superior Court correctly reversed the order of a new trial because the post-trial judge erred as a matter of law in ruling that the trial judge made a mistake in interpreting the medical insurance policy at issue.

Accordingly, for the reasons expressed above, we find that the Superior Court erred in holding that the coordinate jurisdiction rule prevented a judge assigned to decide appellant's post-trial motions from finding that another judge of the same court erred when entering the verdict at the conclusion of a

anatomy and physiology of the intervertebral disc requires an appreciation of the relationship between the disc and other structures and its role as part of the functional unit of the vertebral column." 1B Attorney's Textbook of Medicine at 15–7. Moreover, The American Medical Association Family Medical Guide describes the spinal column as follows: "The spinal column or backbone, stretches from the base of the skull to the bottom of the buttocks. It consists of more than 30 separate bones called vertebrae. The vertebrae are linked by strong ligaments and flexible flattened discs." American Medical Association Family Medical Guide at 557.

non-jury trial. However, because the Superior Court correctly determined that the post-trial judge erred as a matter of law in ruling that the trial judge made a mistake in concluding that the word "spine" contained in the exclusion provision of the insurance policy encompassed the intervertebral disc injury suffered by appellant, we affirm the order of the Superior Court.

Jurisdiction is relinquished.