J-A12029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| T.A.T. TRUCKING AND CONTRACTING, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES J. ANDERSON CONSTRUCTION COMPANY, INC. AND SUPERIOR MATERIALS, INC. | : | |
| | : | |
| | : | |
| APPEAL OF: JAMES J. ANDERSON CONSTRUCTION COMPANY, INC. | : | No. 2700 EDA 2023 |

Appeal from the Judgment Entered July 12, 2023
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2021-00887

BEFORE: PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY KING, J.: **FILED SEPTEMBER 19, 2024**

Appellant, James J. Anderson Construction Company, Inc., appeals from

the judgment on liability entered in the Bucks County Court of Common Pleas,

in favor of Appellee, T.A.T. Trucking and Contracting, Inc. We affirm.

The trial court set forth the relevant facts and procedural history of this

case as follows.

> In 2015, Waste Management ("WM"), owner/operator of
> Fairless Landfill, entered into a Prime Contract ("Prime
> Contract") with [Appellant] for hauling quantities of
> structural fill at the Fairless Landfill site ("Fairless Landfill
> Project"). [Appellant] then subcontracted with [Appellee]
> for the hauling of structural fill pursuant to the Prime

_____

* Former Justice specially assigned to the Superior Court.

Contract for Phases 1 & 2 of the Fairless Landfill Project. The Subcontract Agreement incorporated all of the terms of the Prime Cont[r]act for the Fairless Landfill. Under the Subcontract Agreement, [Appellee] assumed **all** of the duties, responsibilities, and obligations placed upon [Appellant] in the Prime Contract with respect to [Appellee's] work contained in Purchase Order 15411-002.

In the 2015 Subcontract Agreement, [Appellee] is designated as "the Subcontractor." As the Subcontractor, [Appellee] is required to perform **all** of the hauling services required by the Purchase Order 15411-002 for the **total available** Structural Fill listed therein. Specifically, the 2015 Subcontract states that [Appellee] is to "perform **all** of the **Subcontractor's Work**…" The Subcontractor's Work requires [Appellee] to "[f]urnish, fuel, maintain and operate **all** necessary tri-axle dump trucks (35 trucks per day minimum) to provide the **required** hauling services listed on the Attached **purchase Order 15411-002**."

As payment for the "Subcontractor's Work," the 2015 Subcontract Agreement provided that all quantities of work listed on the Purchase Order were approximate but [Appellee] was to be paid "the unit prices listed in…Purchase Order 15411-002" for "the **actual quantity of work performed**…["]

Purchase Order 15411-002 listed 12 Structural Fill hauling locations in Phases 1 and 2 of the Fairless Landfill Project; approximate quantities of Structural Fill hauling for those locations; and provided unit prices for the hauling. The approximate value of the 2015 Subcontract Agreement, based on the approximate quantities and specified unit cost contained in the Purchase Order 15411-002 was $4,811,838.94.

There are no terms contained in the 2015 Subcontract Agreement allowing [Appellant] to subcontract with any other hauler to perform the required hauling services listed in Purchase Order 15411-002. However, [Appellant] engaged Superior Material, Inc. ("Superior") to perform hauling services under the Subcontract Agreements.

On January 23, 2019, [Appellant] and [Appellee] executed

two Subcontract Agreements ("2019 Subcontract Agreements") containing nearly identical terms and conditions as the 2015 Subcontract Agreement. Excepting that the Subcontractor's Work pertains to Phases 1-4 and 5-8 on the Fairless Landfill Project and Purchase Orders 15411-050 and 19403-001. Due to the nearly identical key terms, the [court] incorporates all of the above-referenced facts referencing the 2015 Subcontract Agreement and the Purchase Order 15411-002 to also pertain to the 2019 Subcontract Agreements and their respective Purchase Orders 15411-050 and 19403-001.

(Trial Court Opinion, filed 12/12/23, at 4-7) (footnotes omitted; emphasis in original).

On February 17, 2021, Appellee filed a complaint against Appellant and Superior. The complaint averred that in September 2018, Appellee learned that Appellant had engaged Superior to perform subcontracting services that Appellee had solely been engaged to perform; was poaching and hiring away Appellee's sub-subcontracted truckers "in order to enable [Appellant] to take direct control over and to perform, and to deprive [Appellee] of its performance of" the work for which Appellee had the sole contractual right and responsibility to perform under the 2015 Agreement; and had further engaged in unit price and subcontract price tampering. (*See* Complaint, 2/17/21, at 5-7). The complaint raised counts of breach of contract of the 2015 and 2019 agreements, breach of the duty of good faith and fair dealing and the doctrine of necessary implication of the 2015 and 2019 agreements, intentional interference with existing contractual relations, concerted tortious conduct, aiding and abetting Superior's intentional interference with the 2019

- 3 -

agreements, and unjust enrichment. (*See id.* at 17-28). On April 21, 2021, Appellee filed an amended complaint.[1]

Over the course of the next two years, the parties litigated the matter. On March 6, 2023, the trial court entered an order approving the parties' stipulation to a bifurcated trial, allowing the trial court to determine whether the contracts constituted "requirements contracts" such that Appellee had the exclusive right to haul all quantities of structural fill on the projects subject to the Subcontract Agreements. On March 22, 2023, the parties filed a joint stipulation of facts.

On July 12, 2023, the trial court entered a non-jury verdict on liability in favor of Appellee, determining that the contracts were exclusive requirements contracts, such that Appellee had the exclusive right to haul all available structural fill under each purchase order.

On Monday, July 24, 2023, Appellant timely filed a motion for post-trial relief, which the trial court denied on August 10, 2023. On September 8, 2023, Appellant filed a motion for determination of finality. On September 19, 2023, the trial court entered a certification of appealability pursuant to Pa.R.A.P. 341(c). Appellant timely filed a notice of appeal on October 6, 2023. On October 19, 2023, the trial court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and

_____

[1] On August 6, 2021, Appellee discontinued all claims against Superior.

Appellant timely complied on November 8, 2023.

On appeal, Appellant raises the following issue for our review:

1. Did the trial court err in finding that the subcontract agreements at issue in this case constitute exclusive, "all requirements" contracts where: (a) the contracts do not clearly and expressly set forth the parties' intent to enter into exclusive requirements contracts; (b) the trial court failed to address the "termination for convenience" provisions in the contracts and did not interpret the contracts as a whole; and (c) the terms included within the contracts, and especially the terms omitted from the contracts, fail to meet the well-settled standards under Pennsylvania law for contacts to qualify as exclusive, "all requirements" contacts?

(Appellant's Brief at 6).

Appellant argues that the trial court erred by determining that the Subcontract Agreements were exclusive requirements contracts where the contracts did not contain specific and essential terms that clearly and expressly set forth the parties' intent to enter an exclusive contract for all requirements. Appellant claims the trial court misinterpreted and misapplied certain words in the Subcontract Agreements, failed to give weight to other terms in the Agreements, and reached a result contrary to what the parties had intended. Appellant insists the contracts did not give Appellee exclusive rights to haul, but only required that it perform all of the required work. Further, Appellant contends that because it could terminate the contracts for any reason, that was evidence that the parties did not intend to enter an exclusive contract. Additionally, Appellant maintains that because the contract did not expressly provide for exclusivity, exclusivity should not be

read into the contract. Appellant submits that the trial court erred in considering the language of the Purchase Orders, because the Purchase Orders were not part of the contract. Viewed as a whole, Appellant concludes the Subcontract Agreements cannot reasonably be interpreted to be exclusive "all requirements" contracts, and this Court should grant relief. We disagree.

This Court applies the following standard of review to verdicts following a bench trial:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue…concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating and Cooling LLC*, 100 A.3d 660, 664-65 (Pa.Super. 2014) (quoting *Wyatt Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 564 (Pa.Super. 2009)). Further,

> "Whether a judge has correctly interpreted a writing and properly determined the legal duties which arise therefrom is a question of law for the appellate court." *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 263, 705 A.2d 422, 426 (1997). The legal effect or enforceability of a contract provision presents a question of law accorded full

- 6 -

appellate review and is not limited to an abuse of discretion standard. *Id.* *See also Patriot Commercial Leasing Co., Inc. v. Kremer Restaurant*, 915 A.2d 647 (Pa.Super. 2006), *appeal denied*, 597 Pa. 720, 951 A.2d 1166 (2008). "A cornerstone principle of contract interpretation provides that where the words of the document are clear and unambiguous, we must 'give effect' to the language." *Tindall v. Friedman*, 970 A.2d 1159, 1165 (Pa.Super. 2009). Likewise, if the matter under review involves the interpretation of the Pennsylvania Rules of Civil Procedure, we have before us a question of law, where our standard of review is *de novo* and our scope of review is plenary. *Boatin v. Miller*, 955 A.2d 424, 427 (Pa.Super. 2008).

*Midwest Financial Acceptance Corp. v. Lopez*, 78 A.3d 614, 624 (Pa.Super. 2013).

The Uniform Commercial Code addresses exclusive requirements contracts as follows:

**§ 2306. Output, requirements and exclusive dealings**

**(a) Quantity measured by output or requirements.**--A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

**(b) Obligation of parties in exclusive dealings.**--A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.

13 Pa.C.S.A. § 2306.[2]

In *Stradling v. Allied Hous. Assocs.*, 349 Pa. 405, 37 A.2d 585 (1944), the Supreme Court considered whether the written contract between the parties obligated the defendant to use the plaintiff's equipment for all of its hauling during the contract period or whether the extent to which it was to be used was optional with defendant. The Supreme Court ultimately affirmed the judgment in favor of the defendant, explaining that "to have [a requirement] contract, obligating the lessee to use the lessor's vehicles exclusively, there must be a statement in the agreement that the lessor is to furnish all vehicles which might be required in the business of the lessee." *Id.* at 407-08, 37 A.2d at 587.

Instantly, the 2015 Subcontractor Agreement provides:

> In accordance with all the terms of the Prime Contract(s), which are incorporated herein by reference, the Subcontractor hereby agrees to furnish all necessary labor, materials and equipment, and faithfully perform all the Subcontractor's Work covered below to the acceptance and satisfaction of the Owner and Contractor, and assumes full

---

[2] There is a dearth of authority regarding requirements contracts in Pennsylvania. Thus, Appellant relies on some unpublished decisions of this Court. However, Appellant is not permitted to cite to, and we may not rely on, unpublished decisions of this Court filed before May 1, 2019. *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed **after** May 1, 2019 for their persuasive value). Thus, we give no attention to any unpublished decisions of this Court cited by Appellant that were filed on or before May 1, 2019. Appellant also cites to reported and unreported federal district court decisions. Nevertheless, we are "not bound by the decisions of federal courts inferior to the U.S. Supreme Court." *In re Stevenson*, 615 Pa. 50, 57, 40 A.3d 1212, 1216 (2012). Consequently, the cases on which Appellant relies are not binding authority.

and complete responsibility for all the duties, responsibilities and obligations (not limited to the technical and physical aspects of the Subcontractor's Work, and the scope and quality thereof) placed upon Contractor in the Prime Contract with respect to the Subcontractor's Work covered herein.

*   *   *

Subcontractor's Work and Subcontract Price:

Furnish, fuel, maintain and operate all necessary tri-axle dump trucks (35 trucks per day minimum) to provide the required hauling services listed on the attached Purchase Order 15411-002 (herein referred to as the "Subcontractor's Work").  Subcontractor shall be paid the unit prices listed in the attached Purchase Order 15411-002: all quantities are approximate and Subcontractor shall be paid based upon the actual quantity of work performed at the listed unit prices (herein referred to as the "Subcontract Price")…

(2015 Subcontractor Agreement at ¶ 2).  The 2019 Subcontract Agreements contained nearly identical terms and conditions.

In analyzing this contract language, the trial court stated:

Applying the plain meaning to, and therefore the intended use of the word "**all**" in the Subcontract Agreements to be defined as the "whole amount, quantity, or extent of; as much as possible; every member or individual component of; the whole number or sum of; every; any whatever; completely taken up with, given to, or absorbed by[.]"  It is unequivocally clear that the parties structured the Subcontract Agreements as requirement contracts such that [Appellee] was to be the exclusive provider of the required hauling services defined therein.

[Appellant's] argument that the Purchase Orders would be rendered superfluous and meaningless if the Subcontract Agreements were exclusive requirements contracts is totally misguided.  The presence of estimated quantities does not weaken but instead enhances the enforceability of a requirements contract.  An estimate of the quantity to be

- 9 -

purchased constitutes consideration for both parties.

In this case, the Purchase Orders do not identify exact amounts of Structural Fill haulage because such amounts would be impossible to ascertain at time of contracting. For this exact reason, the parties executed the Subcontract Agreements using approximations. The Purchase Orders, instead, identify the Structural Fill hauling locations and the delivery cells, respective to each Phase.

Assuming, *arguendo*, the parties intended the total tonnage contained in the Purchase Orders to be the fixed amount that [Appellee] subcontracted, the Subcontract Agreements would not qualify the quantities as approximate but rather as fixed hauls.

Additionally, [Appellee] was required to provide a minimum of 35 trucks per day to perform all required hauling services listed on the Purchase Orders. If the parties intended to allow other haulers to furnish trucks, [Appellee] would have been required to provide a maximum number of trucks so that other haulers could perform hauling services as well.

The parties agreed to approximate the required hauling service to set a center around which the parties would perform with good faith with the intention that reasonable variation may occur. Likewise, the parties agreed to set a minimum requirement of trucks to show a clear limit on the intended elasticity. These terms are not rendered superfluous or meaningless under a requirements contract. These terms exact meaning and consideration for the parties to allow for reasonable variations in good faith. These terms do not negate [Appellee's] exclusive right to haul all available fill under each Purchase Order.

Based on the aforementioned reasoning, the [c]ourt found that the Subcontract Agreements are requirements contracts that give [Appellee] the exclusive right to haul all available Structural Fill referenced in the Purchase Orders specific to each respective phase of the Fairless Landfill Project. Thus, barring [Appellant] from subcontracting with any other hauler for services contained within the Purchase Orders.

(Trial Court Opinion at 9-12) (footnotes omitted).

The record supports this conclusion. Because the language of the contracts is clear and unambiguous, we give plain effect to the language therein. ***See Midwest Financial Acceptance Corp., supra***. Here, Appellee agreed to furnish **all** necessary labor, materials and equipment to perform the subcontractor's work.[3] ***See Stradling, supra***. Thus, we cannot say that the trial court erred in finding that the parties entered exclusive requirements contracts which gave Appellee the exclusive right to haul all available Structural Fill, and barred Appellant from subcontracting with other haulers for services as described in the Purchase Orders. ***See Stephan, supra***. Accordingly, we affirm.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/19/2024

_____

[3] Appellant's additional arguments—namely, that the termination clause precludes an exclusivity contract, and that the trial court erred in considering the Purchase Orders—are not supported by authority and are ultimately unpersuasive. The trial court appropriately considered the language of the Purchase Orders where the contract itself incorporates the Purchase Orders (specifically, the provision stating that Appellee must provide required hauling services listed on the attached purchase orders).