J-S19029-25

2025 PA Super 224

| | | |
|---|---|---|
| MATTHEW BRATINA AND DENISE BRATINA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1621 EDA 2024 |
| WILLIAM BUNTING, JR. AND BEATRICE BUNTING, AND WILLIAM F. MCGURRIN | : | |

Appeal from the Orders Entered May 13, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No:  211200475

BEFORE:  PANELLA, P.J.E., STABILE, J., and BECK, J.

OPINION BY STABILE, J.:                    **FILED OCTOBER 1, 2025**

In this boundary dispute action, Denise Bratina (Appellant) seeks review of orders entered by the Court of Common Pleas of Philadelphia County (trial court), striking a verdict in her favor and denying post-trial relief.[1]  Following a bench trial, the Honorable Jacqueline F. Allen found that the former owner of Appellant's property, William F. McGurrin (McGurrin), was liable to Appellant for $35,173.35 in damages.  After the verdict was entered, Judge Allen retired, and the case was reassigned to the Honorable Damaris Garcia, who granted McGurrin's post-trial motion to strike the verdict on the ground that all of Appellant's evidence of damages was inadmissible hearsay.  Appellant now argues that the rulings of Judge Allen were binding on Judge Garcia, and that

_____

[1] Appellant's husband, Matthew Bratina, passed away on March 2, 2023, during the pendency of the case.

regardless, her evidence of damages was both admissible and sufficient to sustain the verdict. Finding merit in Appellant's evidentiary claim, we vacate the orders on review and remand the case for further proceedings.

On December 9, 2021, Appellant commenced the instant action against her neighbors, Appellees, William Bunting, Jr. and Beatrice Bunting (the Buntings), as well as a former owner of Appellant's property, McGurrin. In her Complaint, Appellant alleged that the subject property (803 Inverness Lane, Philadelphia, Pennsylvania 19128) was encroached upon by a fence between it and an adjacent lot (805 Inverness Lane) owned by the Buntings. Appellant asserted claims against the Buntings for ejectment (Count I), trespass (Count II), and a declaratory judgment as to the parties' property lines (Count V).

Appellant also asserted claims against McGurrin for a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) (73 P.S. § 201–1 *et seq.*) (Count III) and negligent misrepresentation (Count IV). She alleged that McGurrin knowingly sold her the subject property without disclosing that the fence between 803 and 805 Inverness Lane had in effect reduced the size of her lot.

At the bench trial held on September 26, 2023, the following facts were adduced:

> In the early 1960s, a fence enclosed the yard of the 805 property
> [owned by the Buntings]. The wire fence was treated as the
> dividing line between the 805 property and the neighboring
> property located at 803 Inverness Lane, Philadelphia, PA. [In]
> 1981, the fence was changed to a chain link fence.

- 2 -

[McGurrin] purchased the 803 property in 1989. In or around 1999, a survey of the 803 property was completed. McGurrin discovered that the fence encroached upon a portion of the 803 [p]roperty. The fence remained in place from 1989 to 2017, when McGurrin sold his property to [Appellant]. [Appellant] discovered the encroachment in 2021, when a survey was completed.

Trial Court 1925(a) Opinion, 12/10/2024, at 2-3 (some internal citations and all footnotes omitted).

To assist her in proving her damages, Appellant sought to introduce her "Statement of Damages," which was identified at trial as "Exhibit 16" (The Statement). The body of the Statement is a 4-page summary of Appellant's underlying allegations as to the loss of property and property value caused by the encroaching fence dividing 803 and 805 Inverness Lane. Attached to the Statement were five exhibits labelled, "A," "B," "D," "E," and "F."

Exhibit A of the Statement was the warranty deed executed between McGurrin and Appellant at the time of the property's sale; exhibit B was a survey map of Appellant's property; exhibit D was a chart printed from the City of Philadelphia Department of Revenue website showing the property tax amounts paid on Appellant's property; exhibit E was a print-out from an MLS (multiple listing service) website showing Appellant's property; and exhibit F was a print-out from the City of Philadelphia Department of Revenue website showing the assessed market value of Appellant's property.

The Statement also included an attachment of a page printed from Zillow.com (exhibit C), which included an assessed value of Appellant's

property. McGurrin specifically objected to that portion of the Statement on hearsay grounds, and the objection was sustained. At no point in this case was the content of the Zillow print-out admitted into evidence, and its exclusion is not now at issue.

The averments and calculations in the Statement are straight-forward. A city assessment and private survey determined the size of Appellant's property to be 13,500 square feet. The alleged encroachment area was about 1,084 square feet, or 8.02% of the total lot.

The Statement listed the undisputed purchase price of the home to be $285,000, and an up-to-date assessed value of $332,300, as of the year of the trial, 2023. Also listed were the property tax amounts that Appellant paid between 2017, the year of the property's purchase, and 2023. In those six years, Appellant paid a total of $23,570.50 in property taxes.

According to the calculations in the Statement, 8.02% of the total property taxes Appellant paid equaled $1,890.35, and 8.02% of the assessed property value ($332,300) equaled $33,283.[2] These two totals were added together for a damages amount of $35,173.35, which Appellant attributed to McGurrin. Appellant explained in her testimony that all of the figures reflected in the Statement had already "existed in [her] head" before the exhibit was drafted:

_____

[2] We note that 8.02% of $332,300 is in fact $26,650.46. The figure in the Statement ($332,300) is slightly over 10% of the assessed value in 2023.

- 4 -

[Counsel]:   Mrs. Bratina, how do you calculate your damages?

[Appellant]: The 8.02 percent of what I paid to the City of Philadelphia and what the City of Philadelphia has listed as the property value.

[Counsel]:   Is that a calculation that you yourself made?

[Appellant]: Yes.

[Counsel]:   Is that a calculation reflected in [the Statement]?

[Appellant]: Yes.

[Counsel]:   Is that calculation something that you came up with before [the Statement] was put pen to paper?

[Appellant]: No. I mean, I'm sorry. I don't understand.

[Counsel]:   The math?

[Appellant]: The math?

[Counsel]:   Did the math exist somewhere other than [the Statement]? Did it exist in your head before [the Statement] was drafted?

[Appellant]: Well, sure. Anybody can do the math or you should be able to.

N.T. Trial, 9/26/2023, at 103.

McGurrin objected that the Statement was inadmissible primarily because the information it contained was "expert opinion from a lay person." *See id*., at 94.  Further, McGurrin argued that, since Appellant was "not competent to testify to these things . . . [t]his document is otherwise hearsay

and not admissible as evidence."[3]  The trial court admitted the document and allowed Appellant to testify as to its contents, reasoning that it was merely a summary, or a "factual compilation," of what she was testifying to and adopting as her own while on the stand.  *See id*., at 96; *see also id*., at 204 (overruling objection to the admission of the Statement and admitting the exhibit into evidence).

Repeatedly in her testimony, Appellant specifically referenced the assessed home values and tax payment amounts that were enumerated in the Statement.  Appellant did not verbalize those figures in her testimony, but at that point, the Statement and its exhibits had already been admitted into evidence.  There was no need for Appellant to read each total and line item of those sums, and it is apparent from the record that both the trial court and the other parties understood that Appellant had adopted the calculations within the Statement as her own.

_____

[3] McGurrin also argued that the Statement of Damages was precluded by Pa.R.E. 408, which excludes evidence on behalf of any party to "either prove or disprove the validity or amount of a disputed claim" when such evidence was "a statement made during compromise negotiations about the claim." Pa.R.E. 408(a)(2).  N.T. Trial, 9/26/2023, at 99-100.  When ruling that Appellant could be questioned about the Statement, and that the document could be introduced, Judge Allen sent a "clear message . . . to both sides, that I find this document to be suspect."  *Id*., at 102-03.  Nevertheless, Judge Allen allowed Appellant "to be questioned with regard to the document[.]" *Id*., at 96.

For example, Appellant's counsel questioned her about several attachments to the Statement, including those relating to her property taxes and the assessed property value; each time, Appellant stated that she had used all the figures in the attachments to calculate her overall damages:

[Counsel]: Exhibit D [of the Statement of Damages (Exhibit 16)], the property assessment.

[Appellant]: Yes. That's the valuation -- wait. [Exhibit] D is the property tax.

[Counsel]: And these are taxes that you personally paid?

[Appellant]: Yes.

[Counsel]: And Exhibit E, is that the MLS from when you purchased 805 –

[Appellant]: Yes.

[Counsel]: I'm sorry. 803 Inverness?

[Appellant]: Yes.

[Court]: What is Exhibit E?

[Counsel]: The MLS statement from the time she purchased 803 Inverness.

[Counsel]: And Exhibit F, that's the City of Philadelphia's assessment for the valuation of your property?

[Appellant]: Yes. That's the City of Philadelphia, that's their market value, which is what I used in the calculations[.]

N.T. Trial, 9/26/2023, at 98.

When the trial concluded, the parties submitted proposed findings of fact and conclusions of law. Judge Allen entered a verdict on December 27,

2023, against Appellant as to her claims against the Buntings.[4] However, the judge entered a verdict in Appellant's favor as to her claims against McGurrin, awarding her a verdict amount of $35,173.35, which was equal to the total calculated damages in the Statement. At the time the verdict was entered, no specific findings of fact or conclusions of law had been made.

Judge Allen retired shortly after entering the verdict, prior to consideration of the parties' post-trial motions. It therefore fell to Judge Garcia to rule upon them. Appellant filed a post-trial motion for the verdict to be molded so as to award treble damages; she also filed a petition to assess statutory remedies, including treble damages, attorney's fees, and costs. *See* Post-Trial Motion to Mold Verdict Pursuant to Pa.R.Civ.P. 227.1, 1/18/2024, at paras. 12-24; Petition to Assess Post-Trial Statutory Damages, 1/19/2024, at paras. 24-53.

McGurrin, in turn, filed a post-trial motion to strike the verdict in part on the ground that Appellants had not presented "any competent or admissible evidence in support of an award of damages." McGurrin's Post-Trial Motion, 1/8/2024, at 2-5. In the motion, McGurrin argued that Appellant's Statement of Damages was inadmissible hearsay which was erroneously admitted. Further, McGurrin contended that Appellant's testimony about the diminution

---

[4] The Buntings successfully defended against Appellant's claims and prevailed in an adverse possession counterclaim. Those issues are not germane to the present appeal.

of her property's value was improper lay opinion because the subject required scientific, technical, or other specialized knowledge under the applicable rules of evidence. *See id*., at 2-3.

On May 13, 2024, following a hearing on those post-trial filings, Judge Garcia denied Appellant's requests for an assessment of damages, treble damages, and attorney's fees and costs. Consistent with that ruling, Judge Garcia also granted McGurrin's post-trial motion, striking the verdict with respect to the counts against McGurrin and stating that "[Appellant] did not present any competent or admissible evidence in support of an award of damages." Trial Court Order, 5/13/2024, at 1.

Appellant timely appealed and submitted a somewhat overwrought 1925(b) statement of errors complained of on appeal. *See* 1925(b) Statement, 7/17/2024, at paras 1-72. Judge Garcia found that all issues raised in the statement of errors were waived due to being insufficiently concise. *See* Trial Court 1925(a) Opinion, 12/10/2024, at 1-2. Yet, Judge Garcia did briefly comment that McGurrin's post-trial motion was properly granted because Appellant had not carried her burden of proving damages. *See id*., at 4-5. That is, Appellant's only evidence of damages – her Statement of Damages (Exhibit 16) and trial testimony recounting some of the document's content – was inadmissible hearsay. *See id*.

Thereafter, Appellant filed an Application for Remand requesting that the trial court be directed to consider the claims raised in her 1925(b)

statement. *See* Application for Remand, 12/27/2024, at paras. 21-22. In the Application, Appellant condensed her lengthy 1925(b) statement of errors into the following issues:

> **I**. The Court Erred When It Granted Defendant McGurrin's Post Trial Motion on an Alleged Lack of "Competent or Admissible Evidence in Support of Damages."
>
> **II**. The Court Erred in Overturning the Trial Judge's Credibility Determinations made during Trial.
>
> **III**. The Court Erred in Vacating the Trial Judge's Verdict Pursuant to the Coordinate Jurisdiction Rule.
>
> **IV**. The Court Erred in Denying Plaintiff's Petition to Assess Statutory Remedies and Mold Decision.

*Id*. (Issues renumbered).

This Court granted Appellant's request, and the trial court submitted a Supplemental 1925(a) Opinion, addressing the above issues and giving its reasons why the order on review should be affirmed. *See* Supplemental Memorandum Opinion, 12/10/2024, at, 6/6/2025, at 1-3.

In her brief, Appellant now asserts four grounds for relief that coincide with the discrete issues raised in her 1925(b) statement and the clarification of the issues provided in her Application for Remand:

> 1.  Whether the trial court's order to grant defendant's post[-]trial motion on an alleged lack of "competent or admissible evidence in support of damages" conflicts with well-established case law on the admissibility of an owner's own testimony on damage to real estate[.]
>
> 2.  Whether the presiding trial judge's [Judge Allen's] credibility determinations could be overturned or disregarded by a substituted judge who did not participate in the actual trial[.]

3. Whether the substituted trial judge's [Judge Garcia's] order to vacate the presiding trial judge's [Judge Allen's] verdict conflicts with the coordinate jurisdiction rule[.]

4. Whether the court erred in denying plaintiff's [Appellant's] petition to assess statutory remedies and mold decision.

Appellant's Brief, at 2 (issues renumbered; suggested answers omitted).[5]

For ease of disposition, the first three claims raised by Appellant will be resolved together. Essentially, the underlying issue is whether Judge Garcia, as the successor judge, erred in determining that Appellant failed to present any competent, admissible evidence regarding the asserted damages amount. Appellant does not argue that the Statement of Damages was admissible; she instead contends that her testimony (in which she relied on the figures in the Statement) was admissible evidence which established the amount of money damages she had alleged. Relatedly, she argues that under the coordinate jurisdiction rule, Judge Garcia, the successor judge, was bound by Judge Allen's determinations as to the admissibility and credibility of that evidence.

_____

[5] McGurrin has argued in his Answer Brief that all of Appellant's claims are waived because her 1925(b) statement of errors was not concise enough to allow for meaningful appellate review. *See* Appellee's Brief, at 6-9. Rule 1925(b) mandates that an appellant "shall concisely identify each error that the appellant intends to assert[.]" Pa.R.A.P. 1925(b)(4(ii). While it is arguable whether Appellant's 1925(b) statement comported with the spirit of that rule, we do not find that the unnecessary elaboration of her claims must result in the sanction of waiver. The four main claims were clearly presented in the bolded headings of the 1925(b) statement. The trial court may have understandably been annoyed at the superfluous facts and legal authority cited therein, but we are satisfied that the trial court was fully apprised of the substantive basis of the claims for the purposes of completing a 1925(a) opinion.

First, we note that the coordinate jurisdiction rule provides that "judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." ***Riccio v. American Republic Ins. Co.***, 705 A.2d 422, 424 (Pa. 1997) (quoting ***Commonwealth v. Starr***, 705 A.2d 422, 425 (Pa. 1995)). But importantly, once a trial has concluded, Pennsylvania Rule of Civil Procedure 227.1 allows a trial judge to order a new trial to correct a mistake of law or fact made at an earlier stage of the proceedings. ***See*** Pa.R.Civ.P. 227.1.

This ability of a court to correct a factual or legal mistake survives the substitution of the presiding judge who erred. ***See Riccio***, 705 A.2d at 425. Under Rule 227.2, a successor judge may consider post-trial motions, without deference to the rulings of a prior judge at an earlier stage of the case, if the prior jurist cannot consider the motions "for any reason":

> All post-trial motions and other post-trial matters shall be heard and decided by the trial judge unless the trial judge orders that the matter be heard by a court en banc of which the trial judge shall be a member. If the trial judge for any reason cannot hear the matter, another judge shall be designated to act.

Pa.R.Civ.P. 227.2; ***see also Borough of Jefferson v. Bracco***, 635 A.2d 754 (Pa. Cmwlth. 1993) ("Nothing in Pa.R.C[iv].P. 227.2, or any other rule of civil procedure, limits the discretion or options for post-trial relief that may be granted or denied by a designated judge acting on behalf of an unavailable trial judge. The rule places the designated judge in the shoes of the trial judge.").

Our Supreme Court also has clarified that Rule 227.2 allows a substituted judge to rule on the merits of post-trial motions in the first instance, without being bound by prior rulings of a prior judge made at a different procedural stage of the case:

> Rule 227.2 allows for the substitution of a judge on behalf of an unavailable trial judge, thereby placing the substituted judge in the same position as the trial judge. Based on these factors, we find that the posttrial motion process is a clearly distinct procedural posture from that of the trial judge rendering a verdict at the conclusion of a non-jury trial. Therefore, **because the post-trial motion process is distinct procedurally from that of rendering a verdict following a non-jury trial and because the considerations of the judge are different at each procedural stage** (rendering a verdict at the conclusion of trial versus correcting mistakes made during the earlier trial process), **we hold that <u>the coordinate jurisdiction rule does not apply to bar a substituted judge hearing post-trial motions from correcting a mistake made by the trial judge during the trial process</u>**. To hold otherwise and not allow a judge deciding post-trial motions to overrule legal errors made during the trial process (whether made by the reviewing judge or another judge who presided over the trial) would render the post-trial motion rules meaningless and the post-trial motion process would become nothing more than an exercise in futility.

*Riccio*, 705 A.2d. at 45-26 (emphasis added).

Accordingly, the coordinate jurisdiction rule does not impede a substituted judge from ruling on the merits of a post-trial motion, even where it may result in the striking of a verdict entered by a prior trial judge in a bench trial. *See id*.

Here, at the post-trial motion stage of the instant case, Judge Garcia ruled as a matter of law that Appellant failed to present any competent evidence establishing a damages amount due to the insufficiency of her

testimony and the inadmissibility of her Statement of Damages. Judge Allen had entered a verdict in favor of Appellant, but no findings of fact or conclusions of law were made in support of that ruling. At the time when Judge Garcia began presiding in the case to consider the parties' post-trial motions, the case was in a new procedural posture.

Under the reasoning of *Riccio*, as well as under Rules 227.1 and 227.2, Judge Garcia had authority to consider the parties' post-trial motions and to grant relief if the grounds raised therein were found to have merit. To the extent that Judge Allen found Appellant's evidence of damages to be admissible, Judge Garcia was free to correct such a ruling if it was erroneous. Moreover, it does not appear from the record that Judge Allen ever made a specific finding regarding the credibility of Appellant's testimony, so in any event, Judge Garcia would not have been bound to find Appellant credible.

Turning to the merits of Appellant's evidentiary claim, we hold that Judge Garcia, as the successor judge, erred as a matter of law in ruling that Appellant's testimony, in conjunction with her Statement of Damages, was inadmissible hearsay which could not sustain a finding of damages against McGurrin. Judge Garcia therefore erred by striking the verdict on that evidentiary ground.[6]

---

[6] A trial court's ruling on the admissibility of evidence is subject to an abuse of discretion standard of review. *See Turner v. Valley Housing Dev. Corp.*, 972 A.2d 531, 535 (Pa. Super. 2009).

A property owner is generally "'deemed qualified, by reason of h[er] relationship as owner, to give estimates of the value of what [s]he owns regardless of h[er] knowledge of property valued, and the weight of such evidence is for the jury.'" ***Shamnoski v. PG Energy a Div. of S. Union Co.*.**, 765 A.2d 297, 305 (Pa. Super. 2000) (quoting ***Pavloff v. City of Clairton***, 22 A.2d 74, 75 (Pa. Super. 1941)). An owner may rely upon information they have learned about comparable properties to estimate how the value of the owner's own property had diminished. ***See e.g., Richards v. Sun Pipe Line Co.***, 636 A.2d 1162, 1165 (Pa. Super. 1994) (upholding admission of owner's testimony as to diminished property values based in part on owner's reference to homes of similar size).

The testimony of an owner regarding property value, like any testimony, may potentially implicate the rule against hearsay. Pennsylvania Rule of Evidence 801 defines "hearsay" as a statement not made by the declarant while testifying at trial, and which is offered into evidence "to prove the truth of the matter asserted." Pa.R.E. 801(c). A "statement" is in turn defined in the rule as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Pa.R.E. 801(a). The "declarant" is the "person who made the statement." Pa.R.E. 801(b).

Although Appellant does not now challenge the post-trial ruling of inadmissibility as to her Statement of Damages (the Statement), she does argue that her testimony was not hearsay, making it admissible, competent evidence of her property's loss of value. It is therefore necessary to assess

the interplay between Appellant's testimony on damages, and the manner in which Appellant relied upon her Statement when giving that testimony.

The prior statements or notes of a testifying declarant-witness may be admitted into evidence and not precluded by the hearsay rule. *See* Pa.R.E. 803.1. One such exception is that a witness may rely on a recorded recollection in the form of a "memorandum or record made or adopted by a declarant-witness," when the recorded recollection:

> (A) is on a matter the declarant-witness once knew about but now cannot recall well enough to testify fully and accurately;
>
> (B) was made or adopted by the declarant-witness when the matter was fresh in his or her memory; and
>
> (C) . . . reflects [the declarant-witness'] knowledge at the time when made.

Pa.R.E. 803.1(3) (emphasis added).

The rule provides further that if all three of those conditions are met, "the memorandum or record may be read into evidence and received as an exhibit[.]" Pa.R.E. 803.1(3)(C). Along the same lines, under Pa.R.E.612(a), "[a] witness may use a writing or other item to refresh memory for the purpose of testifying while testifying, or before testifying."

In the present case, Judge Allen allowed Appellant to testify at trial with the assistance of the Statement, referring to it as nothing more than a "**factual compilation of what she, in fact, [was] testifying to**." N.T. Trial, 9/26/2023, at 96 (emphasis added). The judge also admitted the Statement into evidence. *See id*., at 204.

While Appellant did not specifically refer to Rule 803.1(3) or Rule 612(a) at trial or in her appellate brief, it is clear from context that Judge Allen allowed Appellant to refer to the contents of the Statement during her testimony in the manner permitted by those rules. *See* N.T. Trial, 9/26/2023, at 96. *See id*., at 102; *see also* Pa.R.E. 803.1(3) (allowing a witness to rely on a prior recollection under these circumstances).

During her testimony, Appellant admitted that her attorney had assisted her in compiling her calculations on the damages amount asserted within the Statement. *See id*., at 144. She also, however, clearly stated that she had supplied all the Statement's substantive content, most notably the calculations of damages. *See id*., at 92-103, 144.

Appellant's testimony essentially incorporated the facts and figures that had been recorded in the Statement. She referred to the damages totals in the Statement while on the stand, claiming those calculations as her own and vouching for their correctness. *See id*. McGurrin was fully apprised of Appellant's calculations, and McGurrin had the opportunity to cross-examine Appellant on that subject.

Under Rule 803.1(3)(A), Appellant's testimony was proper because she showed that the Statement was a recorded recollection of numerous financial records which Appellant used to determine her damages; the Statement was made at the time when her figures and calculations were fresh in her mind; and the figures themselves reflected Appellant's knowledge of her property's value at the time the Statement was made. Appellant also established that

the calculations within the Statement concerned a matter which she once knew about but could not "recall well enough to testify fully and accurately." Finally, under Rule 612(a), Appellant could rely on the Statement as a writing used to refresh her memory "for the purpose of testifying while testifying, or before testifying." It follows, then, that Appellant could rely on, or adopt, the Statement's contents during her testimony without running afoul of the rule against hearsay.

Judge Garcia therefore erred in ruling that Appellant failed to present any competent evidence to sustain the verdict based on the inadmissibility of the Statement. Through her testimony, Appellant gave a thorough account of how she arrived at the final damages figure attributed to McGurrin. This testimony was independent of the written assertions in the Statement, eliminating any potential hearsay problem despite that the Statement was ultimately found to be inadmissible by Judge Garcia at the post-trial stage.[7]

To remedy Judge Garcia's error, the order granting McGurrin's post-trial motion and striking the portion of the verdict in Appellant's favor must be vacated.

Appellant's fourth and final claim is that Judge Garcia erred in denying her petition to assess statutory remedies and mold the verdict amount in accordance with the UTPCPL, granting her treble damages, attorney's fees,

---

[7] We do not comment on whether Judge Garcia erred in ruling that the Statement was inadmissible hearsay, as Appellant does not raise that issue in this appeal.

and costs. We decline to consider the merits of this claim on appeal because the trial court did not do so in the first instance. Since the trial court found (erroneously) that Appellant did not present any admissible evidence of damages, the substantive issue of the UTPCPL's applicability was never reached. The order denying Appellant's request for that statutory relief must therefore be vacated in light of our disposition on the issue of damages so that the trial court may revisit the motion on remand.

Orders vacated. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/1/2025